IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40122

IN THE MATTER OF THE TERMINATION )
OF THE PARENTAL RIGHTS OF JANE )
(2012-05) DOE. )
-------------------------------------------------------- )
IDAHO DEPARTMENT OF HEALTH & )  Boise, November 2012 Term
WELFARE, )
                 )  2012 Opinion No. 143
 Petitioner-Respondent, )
                 )  Filed:  December 18, 2012
v. )
                 )  Stephen W. Kenyon, Clerk
JANE (2012-05) DOE, )
                 )
 Respondent-Appellant. )
                 )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Cathleen MacGregor-Irby, Magistrate  Judge.

Magistrate Court order terminating parental rights, affirmed.

Alan E. Trimming, Ada County Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.

_____

BURDICK, Chief Justice

This is an appeal from the magistrate court's order terminating the appellant's parental rights with respect to her youngest child.  We affirm the judgment on the ground that there was substantial and competent evidence supporting the magistrate court's findings of fact.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

John Doe was born on September 5, 2011, and declared to be in imminent danger two days later. John's mother, Jane Doe (Mother) has had eight other children, all with her ex-husband (Father).  One died shortly after birth, and the others are aged three to fifteen years old. Mother was not caring for any of these children when the Department of Health and Welfare (DHW) removed John from her care.  Mother's older children have been in foster care twice and

1

all of her other children currently live with various family members. Father is living in Colorado and does not provide support for any of his children, nor did he appear for any of the termination proceedings relating to John.

Mother was diagnosed with multiple sclerosis in 1998. Multiple sclerosis is a degenerative disease for which there is currently no cure. As Mother's multiple sclerosis progressed, it began to interfere with her ability to safely care for her children. From July 2005 through September 2012, thirty-seven child protection referrals were filed in Idaho concerning Mother and Father and their children. The referrals primarily related to inadequate supervision of the children. These referrals led to the children being placed in foster care twice, but both times Mother and Father sufficiently complied with their case plans to have their children returned to their care. The children were removed from their parents' care the first time in 2005 when Father was in Iraq and Mother was unable to adequately supervise the children on her own. The case was vacated after Father returned from Iraq and DHW placed supportive services in the home.

DHW removed the children from their parents' care for the second time in 2007 in response to reports that Mother was unable to adequately supervise the children while Father was working out of town. The children were in foster care for over a year while DHW worked with both parents to implement appropriate supportive services in their home. During that case, DHW determined that Mother was unable to demonstrate that she could independently provide for her children. Father was made the children's primary caregiver and DHW returned them to his care.

Mother and Father moved to Colorado sometime after the children's second stay in foster care. The Colorado protection agency then began receiving referrals about the family and helped place the children with family members. In 2011, Mother returned to Idaho pregnant with John, but without her husband and children.

After John was declared to be in imminent danger and removed from Mother's care, the court placed John in DHW's temporary custody pending an adjudicatory hearing. On October 10, 2011, Mother underwent a neuropsychological evaluation with Dr. Amy Latta at the court's behest. Dr. Latta found that Mother's I.Q., ability to concentrate, language functioning, and verbal memory all fell within an impaired range. At trial, Dr. Latta testified that Mother's impaired verbal memory would make it difficult for her recall statements 25 minutes after they were made. Further, Dr. Latta expressed concern that this impairment may cause Mother to

forget about John and leave him unattended or in a dangerous situation if she became distracted. Dr. Latta acknowledged that there are adaptive technologies that could help a person with memory and cognitive impairments, but that Mother should not live alone or care for a child, even with these technologies. Additionally, Mother scored below the first percentile on the tests relating to executive functioning or problem solving skills. Dr. Latta testified that a person with impaired executive functioning would have significant difficulty in identifying and then meeting a child's daily demands.

Dr. Latta also testified at trial that Mother was functioning within the average range before the onset of multiple sclerosis and that her cognitive decline is likely to continue progressing with her diagnosis of multiple sclerosis. Following her evaluation of Mother, Dr. Latta recommended that the court appoint a legal guardian for her, as she was not able to take care of herself independently and did not comprehend the full extent of her impairments. Dr. Latta also made recommendations concerning medication and physical therapy that would aid Mother in dealing with her multiple sclerosis symptoms.

After the court placed John in the DHW's custody, it issued a case plan that was incorporated into its order on her legal custody of John. This case plan required Mother to follow through with Dr. Latta's recommendations, among other tasks.

A termination hearing was held on May 31, 2012. At this hearing, the social worker assigned to John's case, Pam Derby, testified extensively about her interactions with Mother and how Mother's multiple sclerosis had affected her ability to care for John. Ms. Derby testified that Mother's physical limitations and minimal problem solving skills impaired her ability to parent John. Specifically, Mother could not lift John up nor would she be able to chase after him once he became mobile. Ms. Derby also testified that Mother would need help in her home 24 hours a day, seven days a week, to care for herself and for John, but that Mother's social security disability and Medicaid would only cover this kind of care for Mother. In Ms. Derby's opinion, it was not in John's best interest to return to Mother.

Following the termination hearing the magistrate court issued its Final Judgment and Order Terminating Parental Rights of the Mother on June 25, 2012. In its Memorandum Decision and Order issued the same day, the court found by clear and convincing evidence that Mother "cannot parent this child now and that inability will continue indefinitely" and termination of her parental rights would be in the child's best interest.

On June 29, 2012, the magistrate court entered an order terminating Mother's parental rights. Following Mother's timely filing of this appeal, the magistrate court appointed a guardian for Mother going forward into the appellate process.

## II. STANDARD OF REVIEW

This Court recently set forth the relevant standard of review in *Idaho Department of Health and Welfare v. Doe*:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive[,] and to judge the character of the parties.

152 Idaho 263, 267, 270 P.3d 1048, 1052 (2012) (quoting *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010).

## III. ANALYSIS

This case comes before this Court in accordance with a petition filed under Title 16, chapter 20 of the Idaho Code, titled "Termination of Parent and Child Relationship." "Parental rights are a fundamental liberty interest, constitutionally protected by the Fourteenth Amendment." *In re Doe*, 151 Idaho 356, 362, 256 P.3d 764, 770 (2011). Due process requires the State to prove by clear and convincing evidence both that terminating the parent-child relationship is in the child's best interest and that one of the statutorily approved grounds for terminating the relationship is present. *Id.*; I.C. § 16–2005(1). For example, a "court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and that ... [t]he parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child." I.C. § 16–2005(1)(d). "Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court. On appeal, we

4

will not disturb the trial court's findings of fact if they are supported by substantial and competent evidence." *In re Doe 2009–19*, 150 Idaho 201, 203, 245 P.3d 953, 955 (2010).

## A. Substantial and Competent Evidence Supported the Magistrate Court's Findings of Fact.

In challenging the magistrate court's findings of fact, Mother focuses on the finding that her inability to parent John will continue indefinitely. She argues that the court did not give sufficient weight to information that she could improve in the future. Mother also argues that the court failed to make any findings that the inability to discharge her parental responsibilities would be injurious to her son's well-being. Mother does not challenge the court's finding that she is presently unable to discharge her parental responsibilities.

1. <u>Evidence as to the indefinite and prolonged nature of Mother's inability to parent John.</u>

Mother first argues that the magistrate court did not place sufficient weight on the fact that she may improve in the future and erred in relying on anecdotal evidence that Mother's condition deteriorated during the nine months of the child protection case without proving her sciatic nerve problem was not the cause of this deterioration.

The magistrate court provided detailed findings regarding Mother's inability to care for John and that this ability would continue for an indeterminate and prolonged period of time. After analyzing and discussing all of the evidence in its Memorandum Decision, the magistrate court concluded that "[Mother's] condition continues to worsen. Therefore, any prospect that her situation will improve and that she will someday be in a position to independently parent this child in the future is not only unrealistic but virtually impossible." In coming to this conclusion the court relied on Dr. Latta's extensive neuropsychological evaluation, Ms. Derby's testimony and affidavits relating to her interactions with Mother over the course of John's case, John's guardian *ad litem*'s testimony, and the degenerative and incurable nature of multiple sclerosis.

Furthermore, the magistrate court took into account evidence regarding the possibility of Mother's condition improving in the future. Specifically, the court noted Dr. Latta's statements that Mother could have been experiencing exacerbations in her multiple sclerosis symptoms during Dr. Latta's evaluation. However, the court also considered Dr. Latta's testimony that Mother had been experiencing memory and cognition problems for some time even before the evaluation. Indeed, these memory and cognition problems were evidenced in Mother's multiple referrals to child protective services in both Idaho and Colorado dating back to 2005. The court

5

took into account testimony that adaptive services could help someone with physical and cognitive impairments. In determining the impact of these services on Mother's ability to parent John in the future, the court considered testimony from Dr. Latta and John's guardian that these services would not enable Mother to care for John independently and that Mother had previously refused to take advantage of such services.

This Court has held that a trial court's findings "are competent, so long as they are supported by substantial, albeit possibly conflicting, evidence." *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003). Substantial and competent evidence supports the magistrate court's finding that Mother's inability to parent John would last for a prolonged and indefinite time. As to whether the magistrate court placed too much or not enough weight on specific evidence, this Court does not reweigh evidence, but "defer[s] to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses." *State v. Doe,* 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007) (internal quotations omitted). Therefore, the magistrate court's determination that Mother's inability to parent John would last for a prolonged and indefinite time was not clearly erroneous.

   2.  <u>Findings regarding how Mother's inability to care for John would be injurious to him.</u>

Next, Mother argues that the magistrate court erred by not making a specific finding that Mother's inability to care for John would be injurious to him. It appears Mother is arguing that the court did not find that her inability to parent John would be injurious to him by clear and convincing evidence because the court did not use the statutory phrase "injurious to the health, morals or well-being" in the conclusion of its Memorandum Decision. However, this argument ignores the Findings of Facts, Conclusions of Law and Decree as to the Mother that the magistrate court issued on June 29, 2012, four days after it issued its Memorandum Decision. In this Decree, the court stated that it had found by clear and convincing evidence that "[Mother] is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child." Because the magistrate court did make a specific finding as to Mother's inability to parent John being injurious to his well-being, the only question remaining is whether this finding was supported by substantial and competent evidence.

In its Memorandum Decision, the magistrate court discussed at great length the evidence relating to Mother's physical and mental impairments and how these impairments could be

6

injurious to John. For example, the court noted Dr. Latta's testimony that someone with Mother's memory impairments may forget about a child and leave him unattended or in a dangerous situation. The court also discussed Mother's inability to parent her children in past and present child protection cases, her refusal to use services to assist her parenting, her lack of insight into the extent of her impairments, and the fact that she does not care for any of her other children in concluding that Mother was unable to care for John and that this inability would be injurious to him. These findings along with the multiple pages of evidence the court discusses and analyzes in its Memorandum Decision support the conclusion that Mother's inability to parent John would be injurious to his health and well-being.

**B. The Magistrate Court Did Not Err in Determining that Termination of Mother's Parental Rights Was in her Child's Best Interest.**

Mother contends that the magistrate court erred by not placing sufficient weight on John's guardian's testimony that Mother would be better able to care for John with the right adaptive tools. She also argues that the court should have considered that the reason the guardian's concerns about Mother would not abate was because Mother failed to seek out services, not because of the incurable nature of her illness.

Once a court finds statutory grounds to terminate a parent-child relationship under I.C. § 16–2005(1), the court must then determine if termination is in the child's best interest. I.C. § 16–2005(1); *Doe v. Dep't of Health & Welfare, Human Servs. Div.*, 141 Idaho 511, 516, 112 P.3d 799, 804 (2005). It is not necessary that a child suffer demonstrable harm before a court can terminate the parental relationship. *Doe v. Dep't of Health & Welfare*, 150 Idaho 36, 44, 244 P.3d 180, 188 (2010).

Mother's argument on appeal focuses on whether the magistrate court properly weighed the evidence in making its best interest of the child determination. As noted above, this Court does not reweigh evidence, but "defer[s] to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses." *Doe,* 144 Idaho at 842, 172 P.3d at 1117. Here, the magistrate court discussed the concerns of John's guardian regarding Mother's ability to care for John before concluding that terminating her rights was in John's best interest. Specifically, the court discussed the guardian's testimony that she did not believe that Mother "has the cognitive ability to parent [John] and that if she cannot process how to address his needs, she will not be able to provide for those needs." The court also discussed her testimony

relating to Mother's refusal to take advantage of supportive services and Mother's lack of insight into the extent of her physical and mental impairments. Mother argues that the court should have given more weight to specific statements John's guardian made, but disregards the fact that the guardian ultimately concluded that Mother could not independently provide for John and that her parental rights should be terminated. Because this Court does not reweigh evidence and because substantial evidence supports the magistrate court's findings, we hold that the magistrate court did not err in determining that termination of Mother's parental rights was in John's best interest.

## IV. CONCLUSION

We affirm the judgment of the magistrate court terminating Mother's parental rights. Costs to Department of Health and Welfare.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**