IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42020-2014

|  |  |  |
| --- | --- | --- |
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF: | ) ) ) ) | Boise, July 2014 Term |
|  |  | 2014 Opinion No. 87 |
| JOHN DOE (2014-09), | ) ) ) | Filed: August 22, 2014 |
| Respondent. | ) ) ) | Stephen W. Kenyon, Clerk |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, in and for Twin Falls County. Hon. Roger B. Harris, Magistrate Judge.

The judgment of the magistrate court is affirmed.

James C. Meservy, Williams Meservy & Lothspeich LLP, Jerome, argued for appellants.

Susan M. Campbell, Deputy Twin Falls County Public Defender, Twin Falls, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Twin Falls County from a judgment dismissing a petition to terminate the parental rights of the biological father of two children and to permit the children's stepfather to adopt them. The magistrate court dismissed the action on the ground that the petitioners had failed to prove that termination of the father's parental rights would be in the best interests of the children. We affirm.

## I.
## Factual Background.

Mother and Father lived together for about ten years, during which time they had two children. They separated in October 2009, with Mother having custody of the children. In April 2010, the Idaho Department of Health and Welfare obtained a judgment against Father requiring him to pay child support for the children. He failed to pay the child support ordered. From the time of the parties' separation through 2011, Father saw the children every other weekend.

Mother did not want Father to be alone with the children, and thereafter he saw the children when Mother allowed them to visit his mother, although those visits occurred without Mother's knowledge.

In June 2013, Mother married Stepfather. On August 13, 2013, Mother and Stepfather filed this action seeking to terminate Father's parental rights in the children and to have Stepfather adopt them. They alleged that Father had abandoned the children by failing to maintain a normal parental relationship and that it would be in the children's best interests. The matter was tried in the magistrate court, and at the conclusion of the trial the court held that the Petitioners had proved by clear and convincing evidence that Father had abandoned the children, but that they had failed to prove that termination of Father's parental rights would be in the best interests of the children. Therefore, the court dismissed the petition with prejudice. Mother and Stepfather timely appealed to this Court, and Father timely cross-appealed.

## II.
## Did the Magistrate Court Err in Finding that Petitioners Had Failed to Prove By Clear and Convincing Evidence that Termination of Father's Parental Rights Was in the Children's Best Interests?

Our standard of reviewing the trial court's findings of fact is as follows:

> A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court. It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses. On appeal, this Court examines the record to see if challenged findings of fact are supported by substantial and competent evidence. Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven.

*In re Doe*, 152 Idaho 910, 913, 277 P.3d 357, 360 (2012) (citations omitted). The same standard applies when determining whether a party has failed to sustain its burden of proof. *Doe I v. Doe II*, 148 Idaho 713, 718, 228 P.3d 980, 985 (2010).

In order to terminate Father's parental rights, Mother and Stepfather had the burden of proving by clear and convincing evidence that Father had abandoned the children and that termination of his parental rights was in the children's best interests. I.C. §§ 16-2005(1), -2009. The magistrate court found that Petitioners had proved that Father had abandoned the children

2

but had failed to prove by clear and convincing evidence that termination of Father's parental rights was in the children's best interests.

Petitioners contend that the magistrate court erred by requiring them to prove that there would be actual harm to the children if Father's parental rights were not terminated. In its findings of fact, the magistrate court stated as follows:

> This court must include the evaluation of the best interests of the children that includes their physical, mental, and emotional well-being with all parties involved, stepparent and biologic parents.
>     Is there evidence before the court to show that the children will be harmed by a continuing parental relationship with [Father]? No. Nothing was presented that says that he's a threat to the children, he's going to be a bad guy or won't develop a relationship with them. . . .

Petitioners cite *Idaho Dept. of Health & Welfare v. Doe*, 150 Idaho 36, 244 P.3d 180 (2010), and *Idaho Dept. of Health & Welfare v. Doe*, 153 Idaho 700, 291 P.3d 39 (2012), for the proposition that a child need not suffer demonstrable harm before a court can terminate the parental rights. In the first case, the children's mother and father had repeatedly failed to take the steps necessary to provide their children with a safe and sanitary home. In finding that termination of their parental rights was in the best interests of the children, the trial court stated that "it makes no sense to allow the children to live in an environment where they can get sick and where they can be hurt. And that's the environment they were living in." 150 Idaho at 43, 244 P.3d at 187. The mother appealed, and on appeal she contended that the trial court erred in finding that such termination was in her children's best interests, "because there is no evidence that the children suffered harm or were likely to suffer harm as a result of the condition of her home." *Id.* This Court rejected that argument, stating that "once the State is aware of circumstances indicating a child faces potential harm, it should not have to wait to intervene until that child suffers actual harm or illness, but rather should act to prevent it." *Id.* In that case, the children were put at risk of actual harm by the conduct of their parents with whom they were living.

In the second case cited, the parental rights of a mother, who lived alone, were terminated based upon the findings that she was unable to discharge her parental responsibilities to her nine-month-old son due to her impaired physical limitations caused by multiple sclerosis and her cognitive impairment, that the inability would continue for a prolonged indeterminate period, that it would be injurious to her son, and that it would be in his best interests to terminate her

3

parental rights. 153 Idaho at 701-02, 291 P.3d at 40-41. Mother did not argue on appeal that the lack of harm to her son should preclude a finding that termination of her parental rights was in his best interests. She argued that there was insufficient evidence showing that her condition would not improve or be mitigated in the future. *Id*. at 702-03, 291 P.3d at 41-42. In addressing that argument, this Court did quote from the first case that "[i]t is not necessary that a child suffer demonstrable harm before a court can terminate the parental relationship." *Id.* at 704, 291 P.3d at 43. Again, however, the mother's physical and mental impairments were putting at risk the child of whom she had sole custody.

In both of these cases, the children were at risk of physical harm while being in the custody of their respective parents. This Court held that in such circumstances, it was not necessary to wait until the children actually suffered physical harm before deciding that it was in the best interests of the children to terminate the parents' parental rights.

Although there is no requirement that a child suffer actual harm before the parent's parental rights can be terminated, the lack of any evidence showing that termination of a parent's parental rights is necessary to prevent harm to the children is a factor that the trial court can consider when deciding whether termination of a parent's parental rights is in a child's best interests. The court stated that its evaluation of the best interests of the children "includes their physical, mental, and emotional well-being with all parties involved, stepparent and biologic parents." It also recognized that children can be negatively impacted when a parent fails to maintain a normal parental relationship with them. However, the court found, based upon the totality of the circumstances, "the Court in this case doesn't believe there's sufficient evidence before it to establish by a clear and convincing standard that that type of trauma exists or that it will ever exist in the future." The court also found that Petitioners had not proved "that there's any benefit to or that it would be in the best interests of the children to terminate [Father's] rights."

The court noted that Petitioners' evidence focused upon showing that Stepfather was a better parent than Father had been. The court stated:

> Most of the evidence that was presented and the argument that was made in conclusion had to do with custodial issues, where the children should live on a primary basis, who's more bonded, how they get along with the other siblings, all the factors that are outlined in [Idaho Code section] 32-717. Those aren't the issues that are before the Court today.

4

The court was correct. Idaho Code section 32-717(1) sets forth factors for a court to consider when giving direction for the custody, care, and education of children in a divorce action. It has no application to proceedings seeking to terminate a parent's parental rights. *See In re Doe*, 148 Idaho 432, 440, 224 P.3d 499, 507 (2009) (Idaho Code section 32-717 only applies to actions for divorce). The issue in a termination proceeding is not whether the natural parent or the stepparent would better discharge parental responsibilities. As the court stated:

> To weigh the abilities of a nonparent against those of a biologic parent or to weigh the relationship of who's bonded more with the children, stepparent or biologic parent, inappropriately clouds the interests of the—this court believes it inappropriately clouds the best interests analysis it has to perform in this case.

Mother contends on appeal that the children should have only one father—in this case the Stepfather. She argues: "The Magistrate didn't see any instability in the children having two fathers. He contends that [Stepfather] can pay the bills, coach, nurture, be there for the children, and leave [Father] on the 'fringes'. Such reasoning is inconsistent with stability for the children." She also contends:

> In the alternative, the best interest test alone is sufficient grounds or reasons to terminate. Incarceration, (here [Father] was in Jail the last time the children were taken to see him), lack of support, lack of regular support, lack of stability and permanency, current placement was such that children were thriving, stable and safe, and were having their needs met, have all been found to amount to substantial evidence to support termination of parental rights.

The magistrate court correctly held that the decision to terminate a parent's parental rights cannot be based upon whether a stepparent would better fulfill parental responsibilities than the biological parent. "A parent has a fundamental liberty interest in maintaining a relationship with his or her child." *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). That the parent who has primary physical custody of the child marries someone who can be an excellent parent is not a ground for denying the other parent his or her fundamental liberty interest.

At the time of the trial, Father was 30 years of age and was living with his mother. He had dropped out of high school and had no marketable skills or training. He had been unemployed for some time, but had recently obtained full-time employment. The court found that Father "believed that some of his failure to physically visit with the children might have been a result of his poor financial conditions, his incarceration, and [Mother's] unwillingness to

5

allow him to be alone with the children." After this action was filed, Father commenced an action to obtain visitation with the children, which has been placed on hold to await the outcome in this case. During the trial, he testified that he wanted to reestablish a relationship with his children. The magistrate court concluded that he should be given an opportunity to do so where there was no evidence that it would be detrimental to the children. The court stated:

> Is there evidence before the court to show that the children will be harmed by a continuing parental relationship with [Father]? No. Nothing was presented that says that he's a threat to the children, he's going to be a bad guy or won't develop a relationship with them. . . .
>
> . . . .
>
> This court recognizes that children can suffer emotionally under some circumstances like those, and that that type of emotional response is a factor it has to consider. But having heard everything in the totality of the circumstances, the court in this case doesn't believe there's sufficient evidence before it to establish by a clear and convincing standard that that type of trauma exists or that it will ever exist in the future. If [Father] is allowed to reestablish a normal parental relationship with the children, as he committed at trial to do, then the children would lose nothing by having [Father] continue as their legal parent while [Stepfather] continues to serve as their daily father figure. If [Father] acts as a normal parent, gets to pay support and exercise visitation, then the family relationship recognized by the Idaho legislature will come to fruition, and that will be a benefit to the children.

Mother wants this Court to reweigh the evidence and conclude that termination of Father's parental rights would be in the best interests of the children. "Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court." *In re Doe*, 153 Idaho 258, 263, 281 P.3d 95, 100 (2012). "On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing." *Dep't of Health and Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). The magistrate court found that Mother had failed to prove by clear and convincing evidence that termination of Father's parental rights was in the best interests of the children, and that finding is supported by substantial and competent evidence.

## III.
### Did the Magistrate Err in Finding that Father Had Abandoned the Children?

One of the conditions that can be proved to support the termination of a parent's parental rights is that "[t]he parent has abandoned the child." I.C. § 16-2005(1)(a). "'Abandoned' means

the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact." Mother alleged that Father had abandoned the children, and the magistrate court held that she had proved abandonment by clear and convincing evidence. Father cross-appealed, contending that the finding that he had abandoned the children was not supported by substantial and competent evidence.

The judgment entered in this case stated that the Petition For Termination of Parental Rights and Petition For Adoption was denied. That constitutes an adjudication on the merits denying relief on the petitions. *Doe v. Doe*, 155 Idaho 660, 666, 315 P.3d 848, 854 (2013). Because the petition was denied, the magistrate court's finding that Father had abandoned the children is moot. Therefore, we need not address that issue.

## IV.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Mother and Stepfather seek an award of attorney fees on appeal pursuant to Idaho Code sections 12-120 and 12-121. Attorney fees under those statutes are only awardable on appeal to the prevailing party, and they have not prevailed on appeal. Therefore, they are not entitled to an award of attorney fees under either of those statutes.

Father seeks an award of attorney fees pursuant to Idaho Code section 12-121. We only award attorney fees on appeal under that statute if we are left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Where an appeal merely asks us to reweigh the evidence, it is brought without foundation. *Kelley v. Yadon*, 150 Idaho 334, 338, 247 P.3d 199, 203 (2011). We therefore award Father attorney fees on appeal.

## V.
### Conclusion.

We affirm the judgment of the magistrate court. We award Father costs and attorney fees on appeal.

Chief Justice BURDICK, and Justices J. JONES, HORTON and J. Pro Tem WALTERS **CONCUR.**