## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 49598

| | |
|---|---|
| In the Matter of John Doe II and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) ) | **Filed: August 4, 2022** |
| JOHN DOE I and JANE DOE I, Husband and Wife, | ) ) ) ) | **Melanie Gagnepain, Clerk** |
| Petitioners-Respondents, | ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| v. | ) ) | |
| JANE DOE (2022-08), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. Megan E. Marshall, Magistrate.

Judgment terminating parental rights, affirmed.

Jessica M. Long, University of Idaho Legal Aid Clinic; Andrea Brown, Jeanette Moody and Catherine Yenne, Legal Interns, Moscow, for appellant. Jessica M. Long argued.

Mabbutt Law Offices; Catherine M. Mabbutt, Moscow, for respondents. Catherine M. Mabbutt argued.

Jennifer A. Ewers, Moscow, guardian ad litem.

_____

LORELLO, Chief Judge

Jane Doe (2022-08) appeals from the judgment terminating her parental rights. We affirm.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the two minor children in this action. The children were born in 2010 and 2012. Doe's relationship with the children's father was fraught with substance abuse and

1

domestic violence. Following a violent domestic dispute in 2014, Doe and the children's father placed the children into the care of John I (John) and Jane Doe I (Jane), the children's paternal grandparents. When the Idaho Department of Health and Welfare was granted custody of the children in a subsequent child protection action due to concerns over Doe's ongoing substance abuse, untreated mental health issues and lack of stable housing, the children remained with John and Jane. During the ensuing child protection action, Doe failed to complete her case plan and eventually ceased all contact with the children. Doe and the father's lack of compliance with their case plans eventually resulted in the Department recommending termination of their parental rights or placement of the children under John and Jane's formal guardianship. When John and Jane filed a guardianship petition, the child protection action was dismissed. Both Doe and the father consented to the guardianship, and John and Jane were appointed the children's guardians.

Despite the existence of mutual no-contact orders, Doe and the children's father conceived a third child together. The birth of this child motivated Doe to engage in substance abuse treatment, mental health counseling, and parenting classes. After maintaining a period of sobriety, Doe attempted to contact John and Jane in 2017 after the dismissal of the child protection action, hoping to reconnect with the children after about a year and a half without contact. When a phone call and letter went unanswered, Doe filed a motion in the guardianship proceeding seeking visitation with the children after dismissal of the child protection action. John and Jane responded by filing a petition to terminate Doe's parental rights.[1]

Subsequently, the guardian ad litem appointed for the children in the termination proceeding filed a written report with the magistrate court opposing termination, instead recommending (among other things) counseling to reestablish the children's relationship with Doe. The counselor selected for the children similarly supported reestablishing the children's contact with Doe, beginning with writing letters after an initial period of separate counseling. Various circumstances delayed commencement and progression of the recommended counseling for years, including Doe's failure to provide proof of negative urinalysis test results and completion of drug treatment, the subsequent suspension of the counseling due to the COVID-19 pandemic, and little

---

[1]     All further hearings and filings in the guardianship proceeding coincided with those in the termination proceeding.

2

communication between Doe and the counselor. By 2021, due to Doe's nearly seven-year absence from the children's lives, her arrest for driving under the influence of alcohol in March 2021, and her lack of communication with the counselor or guardian ad litem, the counselor and guardian ad litem changed their opinions and recommended terminating Doe's parental rights. After a trial, the magistrate court terminated Doe's parental rights, finding by clear and convincing evidence that she abandoned the children without just cause and that termination is in the children's best interests. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The Idaho Supreme Court has said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Doe*, 148 Idaho at 245-46, 220 P.3d at 1064-65.

## III.

## ANALYSIS

Doe challenges the sufficiency of the evidence supporting the magistrate court's findings that she willfully abandoned the children without just cause and that termination is in the children's

3

best interests. John and Jane respond that substantial evidence supports the magistrate court's termination decision. We affirm the termination of Doe's parental rights.

## A. Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

In this case, the magistrate court terminated Doe's parental rights on the ground of abandonment, I.C. § 16-2005(1)(a). Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. The word "or" is used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

Doe does not challenge the magistrate court's finding that she failed to maintain a normal parental relationship with the children for over a year. Rather, Doe argues that there is not clear and convincing evidence that this failure was willful and that she established just cause excusing her abandonment of her children. We are not persuaded by either argument.

### 1. Willfulness

The magistrate court determined Doe abandoned the children under I.C. § 16-2005(1)(a). In support of this determination, the magistrate court recognized that, in order to warrant

termination of parental rights, abandonment by a parent must be willful and that "for one to willfully fail to do something, he or she must have the ability to do it." The magistrate court then observed that Doe's "last visit and contact" with the children occurred on September 4, 2015, when Doe stopped attending supervised visits required by her case plan in the child protection action. Through the time of the termination trial seven years later, the children had "not spoken to or seen" Doe.[2] The magistrate court further found that, during Doe's absence, John and Jane provided for the children "physically, emotionally and financially."

Doe contends that her failure to maintain a normal parental relationship with the children was not willful because her struggles with poverty, homelessness, and pregnancy prevented such a relationship. Doe asserts that she presented evidence that "her substance abuse and her personal circumstances" prevented her from complying with her "case plan and treatment" and that she ceased visiting the children because she did not want them to "see her in that condition." However, substance abuse issues that interfere with parental abilities are not a defense in parental termination proceedings. *Cf. Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 754, 760, 390 P.3d 1281, 1287 (2017) (recognizing that "a drug problem, which interferes with parental abilities, supports a finding of neglect"). Beyond a vague assertion that a lack of stable housing and transportation made it "difficult to engage with the children," Doe does not elaborate how either her addiction or personal circumstances left her *unable* to engage with the children. To the contrary, the magistrate court found that Doe initially engaged in supervised visits with the children during the child protection action, but later decided to stop attending. Doe similarly fails to explain how substance abuse or her personal circumstances somehow rendered that decision involuntary. Nor does Doe explain why she did not access available resources to treat her substance abuse issues during the child protection action other than to say "she wasn't ready" to do so at that time. Even if Doe's desire to avoid the children seeing her in the throes of addiction could justify the complete cessation of supervised visitation, she presents no cogent argument why she could not engage with the children in some other way. Accordingly, Doe has failed to show that her complete lack of

---

[2]     Doe testified that she saw the children once on a "family outing" with their father and his girlfriend after the termination petition was filed. According to Doe, the children saw her, but she did not approach or interact with them because, without support from counselors, "it was not the place" and "emotionally, not the time" for such an encounter.

engagement with the children was not willful because of her substance abuse issues or personal circumstances and has cited no authority to support that proposition.

Doe's argument that the magistrate court failed to consider evidence of logistical, financial, and physical difficulties in her maintenance of a parental relationship with the children similarly fails. Doe acknowledges that the magistrate court's findings of fact and conclusions of law note the difficulties she faced due to homelessness, domestic violence, and childhood trauma. Nevertheless, Doe asserts the magistrate court erred by failing to "assess whether these difficulties could have supported a finding that [her] abandonment was not in fact willful." We disagree.

The magistrate court's findings of fact and conclusions of law recite the proper legal standard regarding the willfulness of a parent's abandonment of a child. Additionally, contrary to Doe's arguments on appeal, the magistrate court also expressly found that Doe's abandonment of the children was willful.[3] The magistrate court specifically acknowledged the difficulties Doe faced when discussing whether there was just cause for Doe's failure to maintain a parental relationship with the children. We will not infer that the magistrate court failed to also consider salient facts that the record indicates it was aware of in its willfulness assessment.

### 2. Just cause

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists.[4] I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe I v. Doe II*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the

---

[3] According to Doe, the magistrate court failed to "find that [her] abandonment was willful." The record belies this assertion. The magistrate court expressly noted in its findings of fact and conclusions of law that, regardless of John and Jane's treatment of Doe, "she willfully failed to maintain a normal parent child relationship with [the children] for over a year."

[4] When a grandparent seeks termination to adopt a child, a parent's willful failure to maintain a normal parental relationship without just cause for six months constitutes prima facie evidence of abandonment. I.C. § 16-2002(5). Because John and Jane are not seeking to adopt the children, the one-year period applies.

6

parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

When considering whether there was just cause for Doe's lack of contact, the magistrate court noted that "hesitation" by John and Jane and COVID-19 caused "significant delay" in the entry of a stipulated order governing the children's therapeutic counseling and in the progress of the actual counseling and further reunion efforts. The magistrate court further observed that, despite knowing that the stipulated order for therapeutic counseling would require such, Doe failed to "provide the urinalysis test results and treatment completion paperwork" establishing her sobriety to John and Jane or the guardian ad litem. Thus, notwithstanding other sources of delay, Doe failed to "fulfill her obligations" to initiate counseling and a reunion with the children. Similarly, John and Jane's support of the children's father during his addiction recovery neither excused Doe's willful failure "to participate in her case plan and treatment despite the resources and support available" or her voluntary cessation of visitation with the children. Consequently, the magistrate court found that, regardless of John and Jane's less favorable relationship with Doe relative to the children's father, Doe "willfully failed to maintain a normal parent-child relationship with [the children] for over a year" without just cause.

Doe challenges the magistrate court's conclusion that she failed to show just cause for failing to maintain a normal parental relationship with the children. According to Doe, she presented sufficient evidence to establish that John and Jane's "conduct and interference gave [Doe] just cause for failing to maintain a normal parent-child relationship with her children." A parent must respond with evidence establishing just cause for a failure to maintain a normal parental relationship with a child if a petitioner satisfies its burden of persuasion that there is no just cause. *Id.* Just cause must be demonstrated through evidence relevant to the period of abandonment. *Doe v. Doe*, 155 Idaho 505, 510, 314 P.3d 187, 192 (2013).

Doe's discussion of this issue focuses on the period after she attempted to contact John and Jane in 2017 until the termination trial. Doe asserts that there was just cause for her lack of a relationship with the children during this time because John and Jane "dragged their feet and interfered with" the children's counseling and the reunion process. For example, Doe cites a letter from the counselor indicating that three counseling sessions were canceled sometime after October

2020 due to school events for the children as evidence of a "gap in the reunification process" caused by John and Jane. Such evidence is irrelevant to whether there was just cause for Doe's failure to engage with the children during the interval between her last supervised visit with the children in 2015 and her attempt to contact John and Jane in 2017. This period, standing alone, is sufficient to establish prima facie evidence of abandonment if it occurred without just cause. *See* I.C. § 16-2002(5). According to Doe, this seventeen-month absence resulted from her "personal struggles with addiction, trauma, and poverty," not a desire to unnecessarily delay reunification. The magistrate court expressly considered Doe's personal struggles, but determined that they did not "excuse" or provide just cause for her abandonment of the children. Doe has not explained how her personal struggles rendered her unable to maintain *some* form of contact with the children or otherwise excused her complete lack of engagement.

Moreover, even if John and Jane share responsibility for the slow progress of reunification efforts after 2017, the magistrate court found that Doe contributed to the delay. Not only did Doe fail to establish her sobriety by providing urinalysis test results and treatment completion documentation to the guardian ad litem or John and Jane in a timely fashion, she also failed to contact either the children's counselor or guardian ad litem to inquire as to the progress of reunification efforts during the years after John and Jane filed the petition to terminate Doe's parental rights. Doe argues that the counselor's efforts at maintaining contact with Doe were inadequate. Specifically, Doe faults the counselor for making only one attempt to call Doe in April 2021 before changing positions to recommend termination. However, this was not the only failed attempt to contact Doe in the months prior to the termination trial. The guardian ad litem testified that she attempted to call Doe using a phone number provided by Doe's counsel and left a message that went unanswered after learning that the phone number the counsel had for Doe was not accepting messages. Further, there was no evidence that Doe made efforts to maintain contact with either the children's counselor or the guardian ad litem after Doe requested reunification efforts in late 2017. Doe contends her inaction does not undermine her claim of just cause because it was her understanding that reunification would be at the children's "pace" and she did not want to "rush or interfere with anything." That reunification could only occur at the children's pace does not excuse Doe's failure to maintain contact with the counselor or the guardian ad litem whether by Doe's own initiative or by providing contact information at which she could be

8

reached. Moreover, Doe's arguments related to communication do not explain or excuse her failure to provide any financial support for the children during her six-year absence from their lives. Doe has failed to show error in the magistrate court's determination that she abandoned the children without just cause.

## B.     Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that the only caregivers the children know are John and Jane and that, during the seven years preceding the trial, John and Jane "provided everything" for the children. Not only have John and Jane established a routine that includes "structure, education, love, and nourishment," but they also supported the children "through the trauma and emotional rollercoaster caused by" Doe and the children's father. The magistrate court further found that Doe was absent from the children's lives for the prior seven years and had not provided "any financial support for them during that time nor has she" seen or spoken to them. The magistrate court also observed that Doe's attempts to reenter the children's lives were "emotionally taxing and re-traumatizing" for them. Despite acknowledging Doe's past trauma, mental health and substance abuse struggles and positive progress, the magistrate court concluded it was inappropriate "to sacrifice [the children's] emotional and physical well-being" to sympathies for Doe. Ultimately, the magistrate court reasoned that eliminating the effects of Doe coming in and

out of the children's lives was in their bests interests even though terminating her parental rights "may not result in a higher degree of legal permanency" for the children.

Doe contends that termination is not in the children's best interests because she has "made significant steps to improve her personal situation" and does not pose a present threat of harm to the children. Doe further asserts that the children "will never have a relationship" with their younger sibling "if termination is upheld." However, the magistrate court expressly recognized Doe's improved "personal situation," observing she had "pulled herself out of a dark place of addiction and trauma." Despite this, the magistrate court determined termination is in the children's best interests. We will not reweigh the evidence of Doe's improved personal situation on appeal. *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010).

Doe's argument that she does not pose a threat of harm to the children is also unpersuasive. A child need not suffer actual harm for a parent's parental rights to be terminated. *In re Doe (2019-09)*, 157 Idaho 14, 17, 333 P.3d 125, 128 (2014). The absence of evidence indicating termination is necessary to prevent harm, however, is a factor courts can consider when evaluating whether termination is in the best interests of a child. *Id.* Although Doe may not pose a direct *physical* threat to the children, both the guardian ad litem and counselor opined that attempting to reestablish contact with Doe after more than seven years would be more detrimental to the children than beneficial.

Doe's argument that termination will prevent the children from having a relationship with their younger sibling is similarly unavailing. Sibling relationships are a factor a court can consider in its best interests analysis. *Dep't of Health & Welfare v. Doe (2019-19)*, 166 Idaho 86, 89, 454 P.3d 1169, 1172 (2019). Doe does not, however, argue that termination will result in severance of an existing bond between the children and their younger sibling. To the contrary, the record does not demonstrate that the children have met, or are even aware of, their younger sibling. Thus, Doe's apparent argument is that termination will preclude the development of a potential future relationship between the children and their younger sibling. Such an inchoate potential of a relationship is insufficient to undermine the magistrate court's best interests analysis. Moreover, Doe has cited no legal or factual basis to support her claim that her three children can "never" have a relationship as a result of the termination of her parental rights.

10

Doe further faults the magistrate court for allegedly failing to expressly articulate how Doe "had 'come in and out' of the children's lives," causing them to suffer a retraumatizing "yo-yo effect" that termination would avert in the future. However, Jane testified about how the children participated in counseling during both the child protection action and again later during the termination proceeding. Both John and Jane testified to how participating in counseling to reestablish contact with Doe was upsetting to the children, disrupted their school days, and resulted in them being "not their normal outgoing self." Furthermore, Jane testified about driving the children around town during the child protection case while waiting for notification that Doe had arrived for supervised visitation appointments. Doe would often not show up for such appointments, and Jane would then make an excuse and drive the children back home. Although the magistrate court did not expressly note these effects and evidence in its best interests analysis, that does not mean the determination that past unsuccessful reunification efforts were detrimental to the children lacked substantial evidentiary support.

In addition to the evidence discussed above, there is other evidence in the record supporting the magistrate court's best interests determination. Since the children left Doe's care, she has not supported them financially. Although Doe testified that she purchased some gifts for the children over the years, she did not attempt to send the gifts to the children because she *assumed* John and Jane would withhold them. Additionally, the magistrate court found that Doe's ultimate goal is obtaining primary custody of the children though she is "mindful this will take time." A report by a Department employee completed during the termination proceeding indicating that Doe's ultimate goal is "to be the primary care provider" for the children, supports this finding. The report further indicates that, at the time of the investigation, Doe, her husband, and youngest child lived in a "trailer home" with a roommate.[5] Although Doe and her husband were reportedly applying to get their own apartment, the record does not indicate they were successful or that the trailer home could accommodate the children. Furthermore, the counselor opined that the children had no bond with Doe due to her years' long absence from their lives. Likewise, despite successfully overcoming her substance abuse issues by and large, Doe pled guilty to driving under the influence

---

[5] The record indicates that all the adults residing in the trailer home have criminal histories. The precise nature and extent of each adult's criminal history is unclear.

of alcohol a few months before the termination trial. Finally, throughout the termination proceeding, Doe contacted neither the guardian ad litem nor counselor to inquire as to the progress of counseling or general well-being of the children. Doe has failed to show error in the magistrate court's best interests determination.

## C.    Attorney Fees and Costs

John and Jane argue that they are entitled to attorney fees and costs on appeal under I.C. §§ 12-117 and 12-121. Even assuming that John and Jane properly raised the issue of attorney fees through their bare citation to the statutes in their respondents' brief without identifying the applicable legal standards or presenting legal argument regarding how those standards are satisfied, we decline to award costs or fees to John and Jane. Idaho Code Section 12-117 applies to administrative and judicial civil proceedings involving a person and a state agency, a city, a county or other taxing district as adverse parties. This proceeding does not involve any of the enumerated governmental entities. Consequently, John and Jane are not entitled to attorney fees or costs under I.C. § 12-117.

A court may award reasonable attorney fees under I.C. § 12-121 "to the prevailing party or parties when the judge finds that the case was brought, pursued, or defended frivolously, unreasonably or without foundation." An appeal is generally considered frivolous where it disputes factual findings by a trial court and simply seeks the reweighing of evidence. *Doe I v. Doe (2019-03)*, 166 Idaho 47, 57, 454 P.3d 1130, 1140 (2019). However, the Idaho Supreme Court has held that, due to the seriousness of the liberty interest affected in parental termination proceedings, an appeal seeking examination of conflicting evidence is not frivolous in such cases. *Id.* Although John and Jane are the prevailing parties, their request for attorney fees is denied because of the fundamental liberty interest at stake and the existence of some conflicting evidence in the record.[6]

---

[6] Although John and Jane do not request an award of costs on appeal under I.A.R. 40, parties to an appeal involving termination of parental rights are not entitled to an award of court costs under that rule.

## IV.
## CONCLUSION

Substantial and competent evidence supports the magistrate court's determination that Doe willfully abandoned the children without just cause and that terminating Doe's parental rights is in the children's best interests. Accordingly, the judgment terminating Doe's parental rights is affirmed. We decline to award John and Jane costs or attorney fees on appeal.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.