IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 49010

| | |
|---|---|
| In the Matter of: Jane Doe II, A Child Under Eighteen (18) Years of Age. | ) ) |
| JANE DOE I, | ) ) |
| Petitioner-Respondent, | ) Filed: November 30, 2021 ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| JOHN DOE (2021-32), | ) OPINION AND SHALL NOT ) BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie R. Tucker, Magistrate.

Judgment terminating parental rights, affirmed.

Aaron Bazzoli, Canyon County Public Defender; Alex W. Brockman, Deputy Public Defender, Caldwell, for appellant. Alex W. Brockman argued.

Sasser & Jacobson, PLLC; Angela C. Sasser, Nampa, for respondent. Angela C. Sasser argued.

BRAILSFORD, Judge

John Doe (Father) appeals from the magistrate court's order terminating his parental rights to his minor daughter, V.M. He argues the court erred by concluding that he abandoned and neglected V.M. and that the termination of his parental rights is in V.M.'s best interests. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

While living in Idaho, Mother and Father were involved in a relationship for approximately one year before moving to Pennsylvania and then to New Jersey. By February 2009, Mother was pregnant with V.M. and left Father to move back to Idaho. Although Father knew that Mother was pregnant and when the baby's due date was, Father was not present for

1

V.M.'s birth in October 2010 and did not communicate with Mother for an extended period of time. When V.M was eight months old, Mother moved in with J.V. and eventually married him. V.M. considers J.V. to be her dad, and despite that Mother and J.V. eventually divorced and Mother later remarried, V.M. continues to consider J.V. to be her dad.

In 2011, Mother petitioned and obtained an order for sole legal and physical custody of V.M. In 2013, Father moved back to Idaho and met V.M. for the first time when she was three years old. He did not, however, request to visit V.M. for almost a year. Once he did, Mother eventually agreed to an informal visitation schedule. Conflict soon arose between the parties, however. For example, Father called Mother derogatory names and wore a body camera during custodial exchanges of V.M., accused Mother of spying, was not receptive to allowing Mother to communicate with V.M. while she was in Father's custody, took away V.M.'s watch which she used to call Mother, took V.M. out of the state without Mother's permission, and used pepper spray on J.V. during one exchange. V.M. witnessed this negativity, and it adversely affected her well-being, both physically and emotionally. For example, V.M. exhibited physical symptoms of distress on exchange days and did not want to discuss what occurred during her visits with Father.

In 2015, Father filed a petition for a modification of the custody order. For purposes of resolving this modification, an evaluator performed a court-ordered family needs assessment. In this report, the evaluator expressed concerns for V.M.'s safety based on Father's marijuana use and that Father carried a concealed weapon without a permit and brought it to custodial exchanges. In 2018, a modified custody order was entered, granting Mother legal and primary physical custody of V.M., allowing Father two hours of supervised visitation twice a week and requiring Father to submit to drug testing and to pay the cost of supervised visitation. Further, the order provided Father would be entitled to unsupervised visitation only if he completed six months of continuous, supervised visitation and provided clean drug tests.

The Child Advocacy Services (CAS) supervised Father's visitations with V.M. The cost for visitation was $11.25 per hour, although Father received a grant covering 75 percent of this cost. Regardless, Father declined to exercise his two visits a week, stating he could only afford one visit a week. Then, he reduced his visits to twice a month. In total, Father exercised six supervised visits with V.M. and never submitted to drug testing. In January 2019, Father advised CAS that he would no longer be attending visits with V.M.

Over a year later in February 2020, Father contacted CAS and requested to resume visitation with V.M. based on his attorney's advice. Discussions occurred between the parents and CAS personnel regarding Father's request for visitation, and Mother eventually communicated she would allow court-ordered visitation. Ultimately, however, Father never resumed visitation with V.M., and he has not had any contact with V.M. since he ended supervised visitation in January 2019.

In May 2020, Mother filed a petition to terminate Father's parental rights, and the magistrate court held a trial spanning three days in February, March, and April 2021. During the trial, the court heard testimony from Mother, Father, the supervisor of Father's visitations with V.M., V.M.'s maternal grandmother, V.M.'s paternal grandmother, Mother's new husband, and a social worker involved with the case. In July 2021, the court issued a memorandum decision granting Mother's petition to terminate Father's parental rights.

The magistrate court concluded that Father abandoned V.M. under Idaho Code § 16-2002(5) by "willfully failing to maintain a normal parental relationship" with her and that there was no just cause for Father's failure to maintain a normal parental relationship with V.M. The court also alternatively concluded that Father neglected V.M. under I.C. § 16-2002(3)(a) by "failing to provide proper care and control, subsistence, medical and other care and control necessary for the child's well-being." Further, the court found that the termination of Father's parental rights is in V.M.'s best interests.

Father timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a

3

fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); see also I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id*. The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

### III.

### ANALYSIS

#### A.     Abandonment

Father challenges the magistrate court's conclusion that he abandoned V.M. Idaho Code Section 16-2002(5) defines abandonment to mean "the parent has willfully failed to maintain a

normal parental relationship including, but not limited to, reasonable support or regular personal contact." As used in this section, the word "or" is disjunctive and expresses an alternative. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010). Thus, a parent's willful failure to maintain a normal parental relationship can be based upon the failure to pay reasonable support, the failure to have regular personal contact, or some other failure. *Id.* No universal standard for what constitutes a normal parental relationship exists; rather, whether such a relationship exists depends on the facts and circumstances of each case. *Doe I v. Doe II*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). For a parent to willfully fail to maintain a normal parent-child relationship, the parent must actually have the ability to maintain such a relationship. *Doe I*, 148 Idaho at 715, 228 P.3d at 982. "Failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment." I.C. § 16-2002(5).

On appeal, Father challenges the magistrate court's reliance on his "conduct prior to the 12-month gap between supervised visitation" in January 2019 and his request "to start visitation again" in February 2020 in determining he abandoned V.M.[1] Father argues that, to establish abandonment under I.C. § 16-2005(1)(a), a parent must intend to give up his rights and obligations to a child without intending to reassert those rights and that "once a parent has established or reestablished a normal parent child relationship, actions prior to such establishment or reestablishment of the relationship cannot be abandonment within the meaning of the statute."

Father's argument fails for at least two reasons. First, Father fails to cite any supporting authority for his assertion that a finding of abandonment must be limited to a particular timeframe or that the purported "establishment or reestablishment" of a parent-child relationship forgives a parent's prior abandonment of the child. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Jane Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018).

---

[1]     Father argues that the "principals [sic] of laches and estoppel should also preclude the use of conduct from prior to the custody case being filed to support abandonment" and contends the elements of these principles "were raised by the facts before the [magistrate court]." Father, however, never argued to the magistrate court that either laches or estoppel precluded the court's conclusion that Father abandoned V.M. Issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

Second, contrary to Father's argument, the magistrate court did not rely solely on Father's lack of regular contact during a single period to conclude Father abandoned V.M. Rather, the court found multiple timeframes during which Father failed to maintain regular contact with V.M. for more than a year, including that: (1) Father did not meet V.M. until she was three years old; (2) he did not ask for visitation with V.M. until a year after meeting her; (3) he had only six visits with V.M. between December 2018 and January 2019; and (4) at the time of the court's decision, he had not had contact with V.M. for over two years. Father fails to address his lack of regular contact with V.M. during each of these four different timeframes, and no authority supports Father's assertion that the analysis of his abandonment should be limited to any particular timeframe.

We also reject Father's argument that substantial and competent evidence does not support the magistrate court's conclusion that he abandoned V.M. In support of this argument, Father asserts the magistrate failed to consider "the effects of his ill health" on "his ability to visit [V.M.]"; his girlfriend "assists with the parenting" of his other daughter; "Mother's alienation" of him; and his attempt to contact V.M. on her birthday. Contrary to these assertions, however, the court expressly considered the nature of Mother and Father's relationship and Father's poor health. Specifically, the court found that Mother and Father's "relationship is conflictual" and that Father suffers from serious health issues, is physically disabled, and is unable to work. Despite these findings, the court found Father's assertion that he was unable to maintain regular contact with V.M. to lack credibility. This Court will not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998). Accordingly, we hold the court did not err by concluding Father abandoned V.M.

## B. Neglect

Father also asserts the magistrate court erred by concluding, alternatively, that Father neglected V.M. under I.C. § 16-2002(3)(a). That section defines "neglect" as any conduct included in I.C. § 16-1602(31), and I.C. § 16-1602(31)(a) provides, in pertinent part, that "neglected" means a child who is "without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian, or other custodian or their neglect or refusal to provide them."

6

Father argues the magistrate court "failed to properly apply the legal standard for neglect." Specifically, he contends that the definition of "neglected" in I.C. § 16-1602(31)(a) does not require the parent to be the person providing proper parental care and that the focus should not be on "his parental deficiencies." Rather, Father contends parents only "neglect their children when they *fail to ensure* that the child is receiving proper parental care necessary for the child's well-being." In support of this interpretation of "neglected," Father cites *Doe v. Doe I (2017-15)*, 162 Idaho 653, 402 P.3d 1106 (2017), and *Thompson v. Thompson*, 110 Idaho 93, 714 P.2d 62 (Ct. App. 1986). Neither of those cases, however, supports Father's interpretation of "neglected" under I.C. § 16-1602(31)(a). Contrary to Father's interpretation, this Court in *Thompson* concluded "a parent is not relieved of his or her responsibility to provide appropriate parental care by informally relinquishing custody of the child to a relative or friend." *Thompson*, 110 Idaho at 97, 714 P.2d at 66. Thus, to the extent Father's argument suggests he was ensuring V.M.'s well-being by entrusting her to Mother's care, his argument fails. Moreover, nothing in the record supports Father's assertion that he "ensured" V.M. received proper parental care. Rather, Father's repeated absences from V.M.'s life demonstrate he could not have been aware of whether anyone was properly caring for V.M.

Similarly, *Doe (2017-15)* does not support Father's assertion that he did not neglect V.M. In that case, the Idaho Supreme Court concluded a father's failure "to play a role" in his child's life despite "several opportunities" was not excused by the mother's unwillingness to provide the father with the child's contact information. *Doe (2017-15)*, 162 Idaho at 659, 402 P.3d at 1112. To the extent Father relies on *Doe (2017-15)* to suggest Mother's conduct precluded him from providing for V.M.'s care and well-being, the Court in *Doe (2017-15)* rejected a similar excuse and, in any event, the record does not support that Mother's conduct precluded Father from providing care for V.M.

Finally, Father's challenges to the magistrate court's factual findings of neglect also fail. Father asserts the court found he "could have and should have done more to pay support in reliance upon his long-time live-in girlfriend's home business." The court, however, never made such a finding, including on the page in the record to which Father cites in support of his claim that the court made this purported finding. Although the court found that Father resides with his long-term girlfriend and she owns her own business, which she operates out of the home she shares with Father, the court did not rely on these findings to conclude Father neglected V.M.

7

Father also argues the magistrate court's finding that he "was never involved with the child's education and medical decisions is without factual support in the record." The court did find that "there is no evidence [Father] has ever been involved in [V.M.'s] medical care, education, or extra-curricular activities." Father contends, however, that he "frequently attended school activities which lead to the cookie dough debacle," "bickered" with Mother regarding whether V.M. needed an epi-pen, provided "financial support" in the form of a portion of his social security benefits, and attempted to resume visitation in February 2020. These latter two facts about financial support and visitation, however, do not refute the court's finding that Father was not involved in V.M.'s education or medical care. Further, the former two facts--Father's dispute regarding his purchase of cookie dough from V.M.'s school fundraiser and his refusal to accept medical advice about V.M.'s allergies--do not overcome the court's finding that Father was not involved in V.M.'s education and medical care. Accordingly, we hold that the court did not err by concluding Father neglected V.M.

## C.     Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether the termination of the parent-child relationship is in the child's best interests. I.C. § 16-2005 (requiring finding of both statutory basis and child's best interests for termination); *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991) (same). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.[2] *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014).

---

[2]     Father argues that these "factors are not particularly helpful" and that a better "test" is whether "the child [is] better off as a result of the termination." In support he cites *Hofmeister v. Bauer*, 110 Idaho 960, 964, 719 P.2d 1220, 1224 (Ct. App. 1986). We do not read *Hofmeister*, however, as creating a "test" for determining a child's best interests. Further, the Idaho Supreme Court identified this nonexclusive list of factors after *Hofmeister*. *See Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015) (identifying nonexclusive "important considerations" for determining child's best interests).

After identifying these factors,[3] the magistrate court found that Father "has not been a consistent parental figure," does not have a parent-child relationship with V.M., continues to use illegal substances, has debilitating medical issues, and creates a "toxic environment" in V.M.'s life. Further, the court found that Father lacked credibility, is difficult, is uncooperative, is self-centered, and "prioritizes his own wishes and terms above [V.M.'s] best interests and well-being." In contrast, the court found that V.M. is doing excellent in Mother's care and that Mother has met V.M.'s financial needs; fosters V.M.'s positive relationships with her paternal grandmother and with Mother's ex-husband, J.V., whom V.M. still considers to be her dad; and provides V.M. stability and certainty.

Father makes several challenges to these factual findings. First, Father argues that, other than the finding of a "toxic environment," the magistrate court relied on the same facts to conclude Father abandoned and neglected V.M. as it relied on to conclude V.M.'s best interests and that "something more is necessary to determine if the child would be objectively better off as a result of the termination." We disagree. The court correctly identified and considered the factors relevant to V.M.'s best interests and, to the extent the facts supporting the conclusions that Father abandoned and neglected V.M. overlap with those of V.M.'s best interests, Father concedes those facts are relevant. Further, we disagree with Father's assertion that "something else" "of the gravity of [an] untreated pedophile" is necessary to support a conclusion that the termination of his parental rights is in V.M.'s best interests.

Second, Father also challenges the magistrate court's finding that Father creates a "toxic environment." Specifically, he argues the court failed to give "proper weight" to the "role [Mother] played in worsening the toxic environment." In support, Father contends Mother forced him to petition for visitation, delayed five months to respond to his request to resume visitation, filed a petition to terminate his rights in response to that request, alienated V.M. from him by criticizing him for "mentioning" V.M.'s half-sister during a visit, "nitpick[ed] and disrupt[ed] the relationship between V.M. and him and his family," was "feeding words" to V.M. about him, and purportedly reported him to the Department of Health and Welfare on numerous occasions. Father, however, fails to cite to any support in the record for his assertions, many of

---

[3]     The magistrate court relied on these factors to analyze V.M.'s best interests. Contrary to any suggestion by the Father, the court did not rely on the rebuttable presumption under I.C. § 16-2005(2)(b)(i), which provides a court "maybe rebuttably presume" an order terminating parental rights is in the child's best interests where "abandonment" is found.

which appear to be conjecture, that Mother "worsened" the toxic environment. Moreover, his contention that Mother was partly responsible for the toxic environment essentially requests that this Court reweigh the evidence, which we decline to do. *See In re Doe*, 152 Idaho 910, 913, 277 P.3d 357, 360 (2012) (ruling court will not substitute view of facts, weigh conflicting evidence, or judge credibility).

Third, Father asserts the absence of a "real plan for a person to step into his shoes" and to adopt V.M. is a basis for concluding the termination of his parental rights is not in V.M.'s best interests. The Idaho Supreme Court, however, has previously indicated that the lack of an adoption plan is not a relevant factor in a termination proceeding. *Doe v. Doe*, 162 Idaho 194, 199, 395 P.3d 814, 819 (2017). As a result, the magistrate court did not err by failing to consider whether V.M. would be adopted in determining her best interests.

Finally, Father asserts the magistrate court "failed to appreciate the difference in determining best interest under subsections (1) and (2)" of I.C. § 16-2005. Subsection (1) identifies the conditions under which a termination may be granted, including neglect and abandonment. Meanwhile, subsection (2) provides for a rebuttal presumption of the child's best interests in certain circumstances including, for example, abandonment, sexual abuse, torture, and murder. According to Father, these subsections create "two distinct classifications of causes of action" and "under subsection (1), [Mother] bears the burden to compelling [sic] show why this matter should not just be handled in a custody case but should be addressed in a termination action."

In support of this assertion, Father cites *In re Doe (2014-09)*, 157 Idaho 14, 333 P.3d 125 (2014). That case, however, does not support Father's assertion that Mother bears the burden to demonstrate that the issue of V.M.'s custody should be resolved by a custody modification instead of this termination case. Rather, the Idaho Supreme Court concluded that I.C. § 32-717, which identifies the factors for consideration in resolving child custody in a divorce case, is inapplicable in a termination case. *In re Doe (2014-09)*, 157 Idaho at 17, 333 P.3d at 128. The case does not stand for the proposition, as Father contends, that Mother must show a compelling reason to bring this termination action versus a custody modification. Moreover, I.C. § 16-2004(a) expressly provides a parent may file a petition to terminate the other parent's parental rights. *See also Hofmeister v. Bauer*, 110 Idaho 960, 963-64, 719 P.2d 1220, 1223-24 (1986)

(holding same standard of appellate review applies regardless of whether petitioning party is private or public).

The magistrate court considered the correct factors in determining V.M.'s best interests and substantial and competent evidence supports the court's findings. Accordingly, we hold the magistrate court did not err by concluding the termination of Father's parental rights is in V.M.'s best interests.

### D. Attorney Fees

Mother is the prevailing party on appeal and seeks an award of attorney fees under I.C. § 12-121. An award under this provision is appropriate if the nonprevailing party pursued, defended, or brought the appeal frivolously, unreasonably, or without foundation. *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 230, 409 P.3d 795, 810 (2017). To receive an award of attorney fees under I.C. § 12-121, the entire appeal must have been pursued frivolously, unreasonably, and without foundation. *Shepherd v. Shepherd*, 161 Idaho 14, 21, 383 P.3d 693, 700 (2016). Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence, has failed to show that the trial court incorrectly applied well-established law, or has failed to provide authority or legal argument in support of the party's assertion. We decline to award attorney fees under I.C. § 12-121 because we cannot conclude Father's appeal was entirely frivolous.

## IV.

## CONCLUSION

We hold that substantial and competent evidence supports the magistrate court's conclusions that Father abandoned and neglected V.M. and that terminating Father's parental rights is in V.M.'s best interests. Accordingly, we affirm the judgment terminating Father's parental rights. We decline to award attorney fees to Mother, but we award her costs under Idaho Appellate Rule 40.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.

11