# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44997

|  |  |
|---|---|
| In the Matter of: JANE DOE I, <br> A Child Under Eighteen (18) Years of Age. <br> ------------------------------------------------------- <br> JANE DOE and JOHN DOE II, husband and wife, <br><br>     Petitioners-Respondents, <br><br> v. <br><br> JOHN DOE I (2017-15), <br><br>     Respondent-Appellant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Boise, August 2017 Term <br><br> 2017 Opinion No. 105 <br><br> Filed: September 22, 2017 <br><br> Karel A. Lehrman, Clerk |

Appeal from the Magistrate Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. A. Lynne Krogh, Magistrate Judge.

The judgment terminating John Doe I's parental rights is <u>affirmed</u>.

Canyon County Public Defender, Caldwell, attorneys for appellant. Scott J. Davis argued.

James F. Jacobson, Boise, attorney for respondents.

_____

JONES, Justice

## I. NATURE OF THE CASE

In a case arising out of Canyon County, John Doe I ("Father") appeals a magistrate court's order terminating his parental rights to Jane Doe I ("Child"). Father argues that it was error to conclude that he neglected Child because Jane Doe ("Mother") prevented Father from supporting or contacting Child. Father also argues that the magistrate court, in analyzing the best interest of Child, impermissibly compared Father's relationship to John Doe II ("Stepfather") without considering Mother's actions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married in December 2008 and are the biological parents of Child, who was born in July 2009. In April 2010, Mother moved from California to Idaho with Child. In July 2010, Father visited Child for her birthday. In October 2010, Mother established residency in Idaho, filed for divorce, and sought sole custody of Child. Mother testified that there were several instances of domestic violence in the marriage and that Father would drink heavily and could become aggressive and abusive. Father testified that there was no domestic violence and that he did not have an alcohol or anger problem during the marriage.

In late October 2010, Mother began dating Stepfather. In November 2010, the divorce decree was entered, which awarded Mother sole custody of Child and required Father to pay child support. In early 2011, Father moved to Idaho. In February 2011, Father visited Mother unexpectedly, acted profane, smelled of alcohol, and wanted to take Child. Mother called the police, and Father was removed from the property.

In April 2011, Mother permitted Father to visit Child for four consecutive weekends, the last of which was an overnight visit. Afterwards, Father testified that Mother stopped letting him visit Child because he had not paid child support. Mother testified that, in addition to Father not paying child support, Father was not prepared for his visits with Child (specifically, Mother complained that Father did not have a car seat for Child at his first visit and another time asked Mother for diapers). Stepfather testified that after the April 2011 visits, Father's text messages to Mother became aggressive, and as a result, Mother stopped communicating with Father directly. However, Mother kept in touch with Father's family.

In June 2011, Stepfather moved in with Mother and Child. Around the same time, Father moved in with Mother's friend ("Girlfriend") and her two children. In late 2011, Mother and Stepfather moved into a different home, and Mother got a new cell phone number. Mother did not give Father the new address or phone number.

In early 2012, Father filed a petition to modify custody. On September 14, 2012, a magistrate court modified the divorce decree to reflect that: (1) Mother shall continue to have sole legal and primary physical custody of Child; (2) Father is entitled to supervised visitation at K.I.D.S. Services or a similar facility for up to one hour every two weeks; (3) if Father wants unsupervised visitation he would be required to submit to an alcohol and psychiatric evaluation to the court; (4) Father is not to consume alcohol within 48 hours of visitation with Child; and (5) Father is required to pay $296 in child support each month.

2

There was conflicting testimony at trial regarding Father's attempted visitations after the 2012 custody modifications. Father testified that he called K.I.D.S. Services, filled out the paperwork, and paid the fees. He testified that he called and emailed to schedule a visit with Child, but K.I.D.S. Services informed him that Mother was not responding and refunded his money. Father testified that he tried to schedule a visit approximately six times over a two-month period before he stopped trying. Mother testified that she called K.I.D.S. Services, filled out the paperwork, but never received a call to schedule a visit. Father made no further attempts to visit Child or to modify custody through the court.

Mother maintained relationships with other individuals in Father's family, but they did not provide Father with her contact information. Father learned of events in Child's life through his family. Father provided birthday gifts for Child in 2011 and 2012.

In 2013, Father was convicted of domestic violence involving Girlfriend. The court entered a no contact order, which Father violated twice. In March 2016, Father and Girlfriend separated. In June 2016, there was another incident of domestic violence in which Father assaulted Girlfriend. Father was sentenced to four years fixed plus six indeterminate, which was suspended with retained jurisdiction. At the time of trial, Father was doing a rider at the state facility in Cottonwood.

Stepfather testified that he served in the army for six years and had been working as an accountant since 2013. Stepfather testified that Child started calling him "Dad," and while at first he corrected her, he relaxed and allowed it after Father's family also referred to Stepfather as "Dad." Mother and Stepfather testified that Child has a "father-daughter relationship" with Stepfather that is similar to his relationship with their other sons. Stepfather is involved in Child's daily life. Until the summer of 2015, Child was not aware she had a dad other than Stepfather.

Girlfriend testified that Father lived with her and her two children, who were from a previous relationship, for nearly five years. Father and Girlfriend also had their own child sometime in 2012. She testified that Father "was a wonderful father and step-father." Girlfriend testified that the incidents between her and Father did not make him a bad dad, and that she would not stop him from seeing her kids. Girlfriend testified that Father talks about Child "all the time, but he felt helpless to do anything, and was saving money to get a lawyer, because he got annihilated when he went to court without one."

Father paid child support sporadically, amounting to around $5,000 during Child's life. The arrearages at the time of trial were approximately $15,000. Father testified that he paid child support to Mother while he was in California and when he first moved to Idaho, but admitted that he has not paid child support since October 2015. Mother further testified that Father did not pay for any of Child's daycare, nor did he provide clothes or any other items necessary for Child's support.

In April 2016, Mother and Stepfather married. On September 1, 2016, Mother and Stepfather filed a petition to terminate Father's parental rights on the grounds of abandonment so that Stepfather could adopt Child. On January 18, 2017, Mother and Stepfather amended the petition to also allege that Father neglected Child. On March 29, 2017, the magistrate court issued its findings of fact and conclusions of law, which follow in pertinent part:

> 34. The court finds and concludes, upon clear and convincing evidence . . . that [Father] has neglected [Child] as defined by Idaho Code § 16-2002(3)(a), in that he has not provided proper parental care and control, or subsistence, medical or other care necessary for the child's well-being.
>
> a. The last time [Father] was with [Child] was in April, 2011. The only other contact he had with [Child] since that time was a birthday present he sent through his mother in 2012. For the last six years, [Father] has provided none of the parental care necessary for [Child's] well-being. All of the parental care necessary for [Child's] well-being has been provided by [Mother] and [Stepfather].
>
> . . . .
>
> 35. [Father] asserts he has not been able to provide the care and support necessary for [Child's] well-being because [Mother] obstructed his efforts to maintain a parental relationship with [Child]. The statute does not define neglect on the basis of what a parent is able to do, but rather based on what is necessary for a child's well-being. . . . willfulness is not necessary to a finding of neglect, and its absence is not a defense to neglect.
>
> 36. [Mother's] conduct has no bearing on [Father's] failure to provide financial support, which is necessary for a child's well-being.
>
> . . . .
>
> 38. The court finds and concludes, based on clear and convincing evidence . . . that termination of parental rights is in the best interest of [Child]. [Child's] biological father is a stranger to her, and she has a father-daughter bond with [Stepfather] . . . .

Additionally, the magistrate court considered that Stepfather had undertaken the necessary responsibilities of parenthood, acknowledging that Stepfather had demonstrated that he was able to make decisions based on Child's best interests. The magistrate court recognized that:

> In this case, there is a step-parent who has undertaken the responsibility of fatherhood, without having the right to those decisions recognized by officials at a school, in a hospital, or in a court. In this case there is a father who has no familiarly with [Child], and who has not for many years attempted to develop any familiarly with [Child]. In this case, it is in [Child's] best interest to have a legal father who has the commitment to, the familiarity with, and the affection for [Child] that is necessary for a parent to make decisions in [Child's] best interest, and who has the legal right to make those decisions. The father who has that commitment to, familiarity with, and affection for [Child] is [Stepfather].

Ultimately, the magistrate court found that Father's neglect of Child was not the result of Mother having obstructed the relationship. Instead, the magistrate court found that Father neglected Child because it was easier for him to leave the responsibility of parenthood to Mother, "while he otherwise went about his life." The magistrate court declined to address the issue of termination based on abandonment because it already found grounds for termination based on neglect. On April 7, 2017, the magistrate court entered an order terminating Father's parental rights.

Father timely appealed.

### III. ISSUES ON APPEAL

1.  Whether the magistrate court erred in terminating Father's parental rights, despite the allegation that Mother prevented Father from providing care and support for Child.

2.  Whether the magistrate court erred by comparing Father's and Stepfather's relationship with Child in the context of analyzing whether it was in the best interest of Child to terminate Father's parental rights.

### IV. STANDARD OF REVIEW

"It is well settled that, in a proceeding to terminate a parent-child relationship, the due process clause mandates that the grounds for termination must be shown by clear and convincing evidence." *Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009) (internal citations omitted). "When the trial court finds that the grounds as defined by statute, which are alleged for termination, are established by clear and convincing evidence, those findings will not be overturned on appeal unless they are clearly erroneous." *Doe I v. Doe*, 138 Idaho 893, 900, 71 P.3d 1040, 1047 (2003). Clear error "will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting, evidence." *Id*. "Substantial and

competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Idaho Dep't of Health & Welfare v. Doe (2011-02)*, 151 Idaho 356, 363, 256 P.3d 764, 771 (2011) (internal citation omitted). "In reviewing [a lower court's] findings, this Court will indulge all reasonable inferences in support of the trial court's judgment." *Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991). "The magistrate has a better opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties." *Idaho Dep't of Health & Welfare v. Doe*, 145 Idaho 662, 664, 182 P.3d 1196, 1198 (2008) (internal citation omitted).

## V. ANALYSIS

**A.     The magistrate court did not err when it determined that clear and convincing evidence supported the termination of Father's parental rights on the grounds of neglect.**

Father argues that he made efforts to provide for Child, but those efforts were futile due to Mother's "deliberate frustration of every attempt." Father asserts that the following facts indicate that Mother refused to allow Father to provide care and support for Child:

> Mother moved to Idaho without him. Mother intended the move to end the relationship with Father. Mother obtained sole legal and physical custody of Child. Father was recovering from injuries sustained in a car accident when served with the original divorce petition. Father moved to Idaho only to be nearer to his daughter. Mother stopped visitation after a verbal altercation over child support with Father. Father moved to Idaho in order to maintain a relationship with Child. When Father attempted to modify the decree, his visitation was reduced to supervised visits through a monitoring agency.
>
> Father attempted to provide gifts for the Child. Father is only able to obtain information about Child from Father's relatives. Mother testified that she provided neither her phone number nor her address to Father. In fact, she testified that Father should have NO access to that information. Child had no idea that Father was her father, instead of [Stepfather] until 2016.

In short, Father argues that it was Mother's "deliberate choices negating and minimizing Father's role in Mother and Child's lives" that prevented him from providing care and support for Child. Accordingly, Father asserts that the magistrate court erred when it found that he failed to provide necessary care and support for Child. In support of his argument, Father cites to a series of cases in which drug and alcohol use constituted neglect. *See In Interest of Cheatwood*, 108 Idaho 218, 697 P.2d 1232 (Ct. App. 1985); *Doe v. Roe*, 133 Idaho 805, 992 P.2d 1205 (1999); *In re Doe*, 143 Idaho 343, 114 P.3d 597 (2006). Father argues that in these cases neglect was found "not

solely for reasons of non-contact or non-support, but the parent's inability to provide a home fit for children." Father asserts that these cases are distinguishable from the current situation based on Father's ability to care and provide a home for his other children with Girlfriend.

Mother and Stepfather contend that the magistrate court did not err in finding that clear and convincing evidence supported the termination of Father's parental rights based on neglect. Mother and Stepfather argue that a parent is not relieved of the responsibility to provide care to a child simply because another has shouldered that responsibility and that "the burden of proof can be established by long-term lack of contact and support, which are both necessary for the child's well-being." Specifically, Mother and Stepfather argue that willfulness is not a defense to neglect. Further, they contend that the evidence demonstrates that Father's behavior was not Mother's fault:

> [Father's] failure to consistently pay child support over the life of [Child] is his own decision. [Mother's] address is unnecessary for him to fulfil this obligation as he is to pay his child support through the Idaho Department of Health and Welfare. The evidence at trial established that, at the time of trial, [Father] was over $15,000 in arrears with his child support payments, and hadn't made any payments since October 2015. Furthermore, since the divorce, [Father] has failed to pay any portion of [Child's] daycare costs, of which the original divorce decree required him to pay 50%.

Mother and Stepfather also allege that Father chose not to comply with the terms of the 2012 custody agreement by failing to obtain alcohol and psychiatric evaluations. Mother and Stepfather allege that Father only attempted to pursue visitation through K.I.D.S. Services on one occasion in 2012. Ultimately, Mother and Stepfather assert that Father's lack of effort to establish contact with Child is undisputed and, even if willfulness were an element of neglect, Father's actions would still constitute neglect based on his long-term failure to provide contact or support for Child. Additionally, Mother and Stepfather dispute Father's claim that neglect requires some "moral failing" and argue that even if it were a prerequisite to a finding of neglect, Father's history of domestic violence would satisfy the burden of proof.

Idaho law allows the termination of a parent-child relationship in cases where the parent has neglected the child and termination is in the best interest of the child. I.C. § 16-2005(1)(b). A finding of neglect is a question of fact that must be established by clear and convincing evidence. *In re Doe (2013-15)*, 156 Idaho 103, 110, 320 P.3d 1262, 1269 (2013) (internal citation omitted). The Child Protective Act, in pertinent part, defines "neglect" as a child:

(a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian . . . .

(b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

I.C. § 16-1602(31).

In determining whether neglect has occurred, a court may consider past character evidence in order to determine future behavior. *Roe v. Doe*, 142 Idaho 174, 178, 125 P.3d 530, 534 (2005). Additionally, the Idaho Court of Appeals has recognized that "nothing in the statutory definition of 'neglect' suggests that a child must suffer demonstrable harm before the parent-child relationship can be terminated." *Cheatwood,* at 220, 697 P.2d at 1234. "It is sufficient that the child 'lacks parental care necessary for his health, morals, and well-being.'" *Id.* The Idaho Court of Appeals has also acknowledged that "a parent is not relieved of his or her responsibility to provide appropriate parental care by informally relinquishing custody of a child to a relative or a friend." *Thompson v. Thompson*, 110 Idaho 93, 97, 714 P.2d 62, 66 (Ct. App. 1986).

Further, this Court has held that "[w]illfulness . . . is not necessary to a finding of neglect, and therefore its absence is not a defense to neglect." *Idaho Dep't of Health & Welfare v. Doe (2015-01)*, 158 Idaho 764, 768, 351 P.3d 1222, 1226 (2015). A court is permitted to consider a parent's failure to pay child support as a factor when determining whether termination is appropriate based on neglect. *Idaho Dep't of Health & Welfare v. Doe (2011-03)*, 151 Idaho 498, 503, 260 P.3d 1169, 1174 (2011); *In re Doe*, 149 Idaho 564, 568, 237 P.3d 661, 665 (Ct. App. 2010); *In Interest of Brown*, 112 Idaho 901, 903, 736 P.2d 1355, 1357 (Ct. App. 1987).

Father argues that in order to "willfully" fail to maintain a normal parental relationship, the parent must have the ability to maintain it and choose not to. *See Doe v. Doe (2011-01)*, 152 Idaho 77, 79, 266 P.3d 1182, 1884 (Ct. App. 2011). However, the analysis in *Doe v. Doe* pertained to a termination based on abandonment. In the context of neglect, this Court has held, "[w]illfulness . . . is not necessary to a finding of neglect, and therefore its absence is not a defense to neglect." *Doe (2015-01)*, 158 Idaho at 768, 351 P.3d at 1226. Indeed, the magistrate court acknowledged that neglect is not found "on the basis of what a parent is able to do, but rather based on what is necessary for a child's well-being." Further, even if this Court were persuaded by Father's argument that he did not "willfully" neglect Child, Father provided no

excuse for his failure to provide financial support, which is necessary for Child's well-being. While it cannot be the only factor, a court is permitted to consider a parent's failure to pay child support when determining whether termination is appropriate based on neglect. *See Doe (2011-03)*, 151 Idaho at 503, 260 P.3d at 1174.

Despite Mother's unwillingness to provide her or Child's contact information, the evidence demonstrates that Father had several opportunities to play a role in Child's life, but his attempts to do so inevitably lost traction. For example: Father paid child support sporadically, amounting to approximately $5,000 during Child's life, but he still owes approximately $15,000 in arrears; Father failed to pay half of Child's daycare costs; Father sent Child birthday gifts in 2011 and 2012, but did not send any gifts after those years; and Father successfully modified the custody agreement in 2012 to allow for supervised visitation, but stopped trying to schedule visits with Child after approximately two months. Father provided no explanation for his failure to try to make further efforts to visit with Child through K.I.D.S. Services or return to the court to enforce the order allowing him visitation. As a result, the last time Father saw Child was in April 2011, and for the last six years Father has failed to provide any parental care necessary for Child's well-being. The foregoing demonstrates that Father neglected Child as defined by Idaho Code section 16-1602(31). Accordingly, the magistrate court's decision to terminate Father's parental rights based on neglect is supported by substantial and competent evidence.

**B.      The magistrate court did not err when it found that the termination of Father's parental rights was in the best interest of Child.**

Father argues that a court, in conducting a best interest analysis, should not consider whether the natural parent or the step-parent would better discharge parental responsibilities. Father argues that the magistrate court disregarded Mother's interference in the relationship between Father and Child and instead erred by "reducing the decision to a contest between Father, who had no relationship due to Mother's actions, and [Stepfather], who had gained the evidentiary benefit from an enhanced relationship with [Child]."

Mother and Stepfather argue that the magistrate court correctly acknowledged the permanency and stability of Child's home with them, and that it did not err when it considered that Stepfather has an intimate familiarity with Child's needs, has undertaken responsibilities of fatherhood, and has had stable employment since he came into their lives, which has contributed to Child's care. Separately, Mother and Stepfather argue that Father was unable to provide permanence and stability for Child, has a history of unemployment, has not significantly

contributed to the needs of Child, has not made any significant effort to become familiar with Child's needs, and has a history of domestic violence. Ultimately, Mother and Stepfather argue that Father's inability to establish a relationship with Child was due to his own inaction and failures. Mother and Stepfather argue that this amounts to substantial and competent evidence in support of the magistrate court's termination of Father's parental rights to Child.

"Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship." *In re Doe (2013-15)*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014) (citing *Matter of Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991)). "Findings are competent, so long as they are supported by substantial, albeit possibly, conflicting, evidence." *Doe v. Doe*, 148 Idaho 243, 246, 220 P.3d 1062, 1065 (2009) (citing *Roe v. Doe*, 142 Idaho 174, 177, 125 P.3d 530, 533 (2005)). In determining whether termination is in the best interest of the child, some factors that a court may consider are: the "parent's history with substance abuse, whether the parent has provided financial support, the child's relationship with those currently caring for him or her and whether the child has improved under that care, the child's need for stability and certainty, and the parent's incarceration." *In re Doe (2015-03)*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015).

Father's contention that the magistrate court improperly considered Stepfather's relationship with Child is without merit. A court is permitted to consider the stability and permanency of a child's home. *See Doe (2015-03)*, 159 Idaho at 198, 358 P.3d at 83. Part of this analysis would naturally include Stepfather's ability to care for Child. The magistrate court found:

> In this case there is a father who has no familiarly with [Child], and who has not for many years attempted to develop any familiarly with [Child]. In this case, it is in [Child's] best interest to have a legal father who has the commitment to, the familiarity with, and the affection for [Child] that is necessary for a parent to make decisions in [Child's] best interest, and who has the legal right to make those decisions. The father who has that commitment to, familiarity with, and affection for [Child] is [Stepfather].

Additionally, Child's relationship with Stepfather was only one factor that was considered by the magistrate court in determining that termination was in the best interest of Child. The magistrate court also considered that Father had not paid child support, or made a substantial effort to contact Child since 2012. It was appropriate for the magistrate court to consider these factors when it analyzed whether termination was in the best interest of Child.

Accordingly, the magistrate court did not err when it found clear and convincing evidence supported the finding that the termination of Father's parental rights was in the best interest of Child.

## VI. CONCLUSION

We hereby affirm the magistrate court's termination of Father's parental rights to Child and award costs to Mother and Stepfather.

Chief Justice BURDICK, Justices EISMANN, HORTON and BRODY, CONCUR.