**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51491**

| | |
|---|---|
| In the Matter of: John Doe II, A Child Under Eighteen (18) Years of Age. | ) ) |
| JANE DOE and JOHN DOE I, | ) ) |
| Petitioners-Respondents, | ) **Filed: August 26, 2024** ) ) **Melanie Gagnepain, Clerk** |
| v. | ) ) |
| JOHN DOE (2024-01), | ) ) |
| Respondent-Appellant. | ) ) ) |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie R. Tucker, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Aaron Bazzoli, Canyon County Chief Public Defender; Cassandra C. Wright, Deputy Public Defender, Caldwell, for appellant.

Lackey Law Group; Quentin W. Lackey, Nampa, for respondents.

---

GRATTON, Chief Judge

John Doe (2024-01) (Doe) appeals from the judgment terminating his parental rights. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe and Jane Doe (Mother) are the biological parents of John Doe II (Child). Doe and Mother had Child in 2013 but were never married. Mother and Doe ended their relationship in 2016, and Doe moved from Caldwell to Idaho Falls to live with his mother. Mother began a relationship with John Doe I (Stepfather). Mother and Doe did not obtain a formal custody, visitation, and support order and, instead, used an informal arrangement.

In February 2022, Mother and Stepfather filed a petition for termination and adoption. The petition sought termination of Doe's parental rights on the basis of abandonment and neglect.

1

The magistrate court found that Doe had neglected Child by not maintaining a normal parent-child relationship and regular contact with Child, failing to engage in medical or educational care, and failing to provide financial support. The magistrate court also found it was in Child's best interests for Doe's parental rights to be terminated. In January 2024, an order terminating parental rights was filed. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

In Matter of Doe, 164 Idaho 511, 515 432 P.3d 60, 64 (2018), the Court stated:

> In our review of the factual findings, "this Court will indulge all reasonable inferences in support of the trial court's judgment." *In re Doe* (2013-15), 156 Idaho at 106, 320 P.3d at 1265 (quoting *In the Matter of Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991)). This Court considers that the finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties. In parental-termination cases, this is immensely important. A cold record of the trial does not tell the whole story. An independent review by our court could not take into account the trial court's superior view of the entire situation.

There is no difference in the standards in reviewing a case based on a private termination as opposed to public termination. *Hofmeister v. Bauer*, 110 Idaho 960, 963-64, 719 P.2d 1220, 1223-24 (Ct. App. 1986) (applying clear and convincing evidence standard in private termination context and reasoning: "We see no reason why the parental interest should receive less protection from the risk of fact-finding error in a 'private' termination case than in a 'public' case"). This

2

standard protects the constitutional rights of parents because after termination, a former parent has no standing to seek involvement in the child's life. *Santosky v. Kramer*, 455 U.S. 745, 759 (1982).

## III.

## ANALYSIS

Doe challenges the sufficiency of the evidence supporting the magistrate court's findings that he neglected Child, and that termination of his parental rights is in Child's best interests. Mother responds that substantial and competent evidence supports the magistrate court's termination decision. We affirm the termination of Doe's parental rights.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky*, 455 U.S. at 769; *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2004(a) expressly provides that a parent may file a petition to terminate the other parent's parental rights. A private termination is an action initiated by an individual, rather than a public agency in a dependency action. *Hofmeister*, 110 Idaho at 963-64, 719 P.2d at 1223-24. While the court's decision to sever the parent's legal relationship is a form of state action, the party seeking and obtaining the termination of parental rights is not the state family regulatory system. In such cases, there is no formal role for a state agency in the proceedings. Although a court may order a public agency to do an assessment, the State is not the driving force of the termination proceedings. As such, there is no statutory requirement of reasonable efforts by the parties to reunify or repair the relationship, when the State is not involved. *In re Bush*, 113 Idaho 873, 877, 749 P.2d 492, 496 (1988) (holding the trial court was not required by statute to make a

finding "as to whether the parents could or could not have been rehabilitated prior to a termination of their parental rights" in an action brought by private parties).

The Idaho Supreme Court addressed a private termination in *Doe v. Doe (2017-15)*, 162 Idaho 653, 402 P.3d 1106 (2017). In *Doe*, the mother and father divorced, Mother was awarded sole custody of child and father was required to pay child support. *Id*. at 655, 402 P.3d at 1108. Two years later, father filed a petition to modify custody, where the magistrate court allowed father to have supervised visitation for up to one hour every two weeks and required him to pay $296 in child support each month. *Id*. Three years later, mother and stepfather filed a petition to terminate father's parental rights based on abandonment and neglect, so the stepfather could adopt the child. *Id*. at 656, 402 P.3d at 1109. At the time of trial, father had not made any appointments for visitation with the child and had $15,000 in arrears of his child support. *Id*. The Court affirmed the magistrate court's termination of father's parental rights based on neglect because father "had several opportunities to play a role in Child's life" but failed to provide any parental care necessary for the child's well-being by not participating in visitations and not paying child support. *Id*. at 660, 402 P.3d at 1113.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Idaho Code § 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

A. **Neglect**

1. **Parental care**

In the first section of his appellate brief, Doe contends that Child was provided proper care and control, subsistence, medical care, and educational care as Child was adequately cared for by

Mother and Stepfather. However, under well-settled law, a parent can neglect a child by failing to provide proper parental care even if the child's needs are being met by others. *Interest of Doe I*, 168 Idaho 74, 79, 479 P.3d 467, 472 (Ct. App. 2021); *Thompson v. Thompson*, 110 Idaho 93, 97, 714 P.2d 62, 66 (Ct. App. 1986). Doe attempts to distinguish *Thompson* on the ground that the mother in that case did not become non-custodial because of separation or divorce and because the child was not being raised by another parent, but by friends and relatives. However, the salient point remains the same: "a parent is not relieved of his or her responsibilities to provide appropriate parental care by informally relinquishing custody" to another. *Thompson*, 101 Idaho at 97, 714 P.2d at 66. In *Thompson*, the Court further noted that the parent had not "made any meaningful attempts to provide parental care necessary for the child's health, moral and well-being, she has simply relied upon the generosity of others." *Id.* at 96, 714 P.2d at 65.

Doe also attempts to distinguish *Interest of Doe I* in which the mother contended that because the child's foster parents provided for the child's needs, the finding of neglect was negated. *Interest of Doe I*, 168 Idaho at 79, 479 P.3d at 472. Doe focuses on the statement by the Court in that case that "the question is whether, due to the conduct or omission of Doe, the child is without proper *parental* care and control, or subsistence, medical, or other care or control necessary for the child's well-being. I.C. § 16-1602(31)(a)." *Interest of Doe I*, 168 Idaho at 79, 479 P.3d at 472. Doe omits the next sentence, in which the Court held, "A parent can neglect a child by failing to provide proper parental care even if the child's needs are being met by others." *Id*. Doe argues that just because one parent is meeting a child's needs does not necessarily mean the other parent is neglecting the child. To the extent Doe is asserting that if a natural parent (as opposed to friends, family, or foster parents) is meeting a child's needs there can be no neglect by the non-custodial parent under the terms of the statute, we reject that argument. Whether Doe neglected Child is based on Doe's actions or omissions.

### 2. Regular contact

Regarding regular contact, there was never a court-ordered or set visitation schedule created between the parties. From 2017-2019, Child would visit Doe for a week each year in Idaho Falls. However, in 2020 during COVID-19, the parties agreed not to exchange Child. In 2021, there were plans to have Child visit Doe for Halloween, but Mother did not permit the visit due to Child's school schedule. Child was then set to visit Doe for the week of Thanksgiving, but Doe cancelled so that Doe could travel with his girlfriend to Montana to assist in a custodial exchange

of her children. It was around this time that Stepfather took over communication with Doe to alleviate Mother's trauma with Doe. Doe did not have an in-person visitation with Child in 2022 or 2023. At the time of trial, Doe had not seen Child in approximately five years.

Doe complains that the magistrate court failed to recognize conflicting testimony as to the number of visits prior to 2021 but provides no argument that the findings are not supported by the record. Doe appears to combine in-person visits and phone visits. The magistrate court found that Doe exercised phone visits which "ebbed and flowed between calling twice a month to once every other month." The magistrate court found that Mother did not prevent calls, but when another activity was ongoing or it was bedtime, she did not take Doe's call. In addition, the magistrate court noted testimony that Child had to be prompted at times to take Doe's call, Child "did not desire to take [Doe's] call and he did not answer the phone when it was presented to him," and Child knew how to call Doe but had not asked to do so. After Mother began the process of filing a formal child support case, Doe attempted to call much more frequently. In May 2023, Mother and Stepfather stopped taking Doe's calls. The magistrate court's findings are supported by substantial and competent evidence in the record.

Next, Doe argues that the magistrate court stated in a footnote that Doe did not reach out to Mother with enough advance notice to allow for scheduling. Doe argues that there is no such evidence in the record. We need not comb the record for support or determine whether the magistrate court made a reasonable inference from the record, as this statement in the footnote, is of very little import. The number of in-person visits found by the magistrate court is supported by the record. To the extent there was occasional difficulties in scheduling, although the magistrate court noted that Doe believes Mother is to blame for his attenuated relationship with Child, Doe has not pointed to specific instances of impairment that materially affected his ability to exercise visitation and overall number of visits. Ultimately, the magistrate court found that Doe simply did not make the effort necessary to have a meaningful parent-child relationship.

Finally, Doe asserts that the magistrate court overlooked the substantial evidence of his logistical and financial difficulties in travelling across the state for visits. This claim is belied by the magistrate court finding that "[Doe's] move to Idaho Falls affected his ability to exercise in-person visitation with [Child] due to the distance and the fact that he did not have a reliable vehicle." The magistrate court noted that Mother and/or her parents assisted with transportation for visits to occur. The magistrate court concluded that "[Doe] could have done more to maintain

regular physical contact with [Child], including planning more than one visitation per year, discussing (ahead of time) a specific parenting plan with [Mother] or seeking a court ordered custody schedule[1] and/or coming to Nampa to see [Child]." The magistrate court concluded that "ultimately, [Doe] was passive in his approach to seeing [Child]," and "[Doe] relied on others to make the visits happen and appeared content with the informality of things." Further the magistrate court concluded that telephone calls were not enough to sustain a parental relationship.

### 3. Medical care, educational care, or extracurricular activities

Regarding participation in Child's medical care, educational care, or extracurricular activities, the magistrate court found that Doe relied exclusively on Mother to provide for Child in these areas. After Mother began the process of filing a formal case to seek child support (although never completed) in the fall of 2021, Doe began mentioning Child's medical and educational care in text messages. Doe stated in a text message: "If I'm going to be paying it I want more access to seeing [Child] and knowing what school he goes[to] or who is doctor [and] all that stuff is [sic]." The magistrate court found that "[Doe] simply did not try to be involved in [Child's] education, medical care or extracurricular activities aside from relying on [Mother] for information."

Doe does not contend that he provided or participated in Child's medical care, education, or extracurricular activities. Doe relied exclusively on Mother and Stepfather for these functions and commitments. As noted, neglect can be found when a parent simply relies on others, including, as in this case, the other parent to provide for the needs of a child.

### 4. Financial contributions

The magistrate court noted that there is no dispute that Doe never paid any regular amount of support for Child. The magistrate court found that Doe had only paid approximately $300 to Mother since the time of their separation in 2016, although noted that Doe said it could have been $700. After Mother began the process of initiating a formal support case, Doe asked to continue on an informal basis of $150 per month, for which he was willing to relinquish custody. Mother did not believe Doe would pay and did not agree. Doe did not voluntarily pay any amount. The magistrate court noted that at trial Doe testified he knew he should have paid child support, but

---

[1] "If the parent must secure visitation through the courts, then the failure to pursue such avenue indicates a willful failure to maintain a normal parental relationship." *In re Doe*, (2013-14), 155 Idaho 505, 508, 314 P.3d 187, 190 (2013).

Mother never asked for it and, up to the point of the initiation of the support case, "it never crossed" his mind.

On appeal, Doe contents that he "had good cause for failing to financially support [Child]." Doe recognizes that the magistrate court found he had paid roughly $300 but "did not seem to recognize the additional monies both parties agreed [Doe] paid toward gas when Mother transported [Child] to Idaho Falls." On this point, Doe neither quantifies the "monies" paid toward gas nor seriously claims that it constitutes support for Child. Doe asserts that the magistrate court "failed to recognize the school supplies and gifts [Doe] supplied for the child." This ignores that the magistrate court found that Doe provided Christmas and birthday gifts between the years 2017 and 2019 and two backpacks and a coat during that period.

Doe further points out the magistrate court noted his testimony that Mother never asked for support and it never crossed his mind and, in addition, that the magistrate court found he was able-bodied and could financially support Child. But, Doe argues, "What the magistrate did not note was father's ability to pay relative to his income and expenses." However, the magistrate court noted that Doe paid rent to his mother, which the testimony described as $150 per month. Doe cites to no other evidence that he provided the magistrate court of his expenses. As to income, the magistrate court specifically found that Doe earns $15 per hour up to 32 hours per week, with monthly income of approximately $1,600. Doe does not challenge the accuracy of these findings or identify other expenses from which to otherwise calculate his ability to pay. While it is not the only factor, a court is permitted to consider a parent's failure to pay child support when determining whether termination is appropriate based on neglect. *Doe*, 162 Idaho at 659, 402 P.3d at 612. The magistrate court's conclusion that Doe had the ability to pay is supported by substantial and competent evidence in the record.

The magistrate court's findings of fact as to neglect are supported by substantial and competent evidence in the record. Clear and convincing evidence supports the magistrate court's conclusion that Doe neglected Child.

**B.      Best Interests**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho at 611, 818 P.2d at 315. When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the

stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In *Matter of Doe*, a private termination case brought by guardians, the Court stated:

The best interests analysis is an expansive analysis with "no set list of factors a court must consider." *In re Doe (2015-03)*, 159 Idaho 192, [198], 358 P.3d 77, 83 (2015). Nonetheless, this Court has articulated numerous factors that a trial court may consider, including a "parent's history with substance abuse, whether the parent has provided financial support, the child's relationship with those currently caring for him or her and whether the child has improved under that care, the child's need for stability and certainty, and the parent's incarceration." *Id*. Other factors include:

the parent's ability to change his or her conduct to assume parental responsibilities, whether there is a good relationship between the child and parent, whether the child has improved while in the parent's care, whether the child's needs are being met, and the parent's ability to provide stability and certainty. *Idaho Dep't of Health & Welfare v. Doe I (2017-21)*, 163 Idaho 83, 89, 408 P.3d 81, 87 (2017).

*Matter of Doe*, 164 Idaho at 516, 432 P.3d at 65.

The magistrate court found that Child's relationship with Doe has been diminished by Doe's absence from Child's life. Doe failed to seize upon the opportunity to build his relationship with Child and be present and supportive in Child's life both physically and financially. The magistrate court stated that Doe demonstrated an inability to prioritize Child's needs over his own. As a result, Child does not look to Doe for care and support. The magistrate court noted that the best interests standard takes into consideration the reality that children need "stability and certainty."

In its findings, the magistrate court noted that Child is nine years old and resides with Mother and Stepfather who has been in Child's life since 2017. Stepfather fulfills a parental role to Child, and Child calls Stepfather "dad." Mother and Stepfather are able to meet the physical, financial, emotional, medical, and educational needs of Child. In its best interests analysis, after determining that Doe had not provided for Child, the magistrate court reiterated these findings.

9

The magistrate court further noted that Child desires to change his name to Stepfather's last name and that Child's well-being has improved since Stepfather came into his life. Further the magistrate court stated that Child feels stable and secure and deserves normalcy, stability, and the support of parents who are present, ready, willing, and able to promote Child's needs and well-being.

Doe makes two arguments on appeal in regard to best interests. First, he points to evidence of his and his family's relationship with Child. Doe argues that Child generally enjoyed their visits and conversation without Child showing regressive behavior. Doe recounts testimony that during these visits they built forts, drew pictures, and had pizza. During telephone conversations they talked about hobbies and video games. He argues that Child also had a good relationship with his extended family. Doe's aunt and mother testified at trial. As to the one-week-per-year visits between 2017 and 2019, the magistrate court recognized that "the visits went well, and [Child] had a good time." The magistrate court stated that Doe acknowledged that his relationship with Child existed primarily through their telephone calls. The magistrate court also noted Doe's expression of love for Child but stated that such expression has not fulfilled Child's need for attentive care and support, which Doe has not provided. As to this argument, Doe essentially asks this Court to reweigh the evidence. It is well established that appellate courts in Idaho do not reweigh evidence. *Idaho Dep't of Health & Welfare v. Doe (2022-22)*, 171 Idaho 277, 282, 519 P.3d 1217, 1222 (2022).

Second, Doe cites to *In re Doe*, 157 Idaho 14, 17, 333 P.3d 125, 128 (2014) for the proposition that "the decision to terminate a parent's parental rights cannot be based upon whether a stepparent would better fulfill parental responsibilities than the biological parent." Doe asserts that Mother suggested at trial that stepfather would be a better father. In addition, Doe argues that it appears the magistrate court endorsed this argument by finding that Stepfather "fulfilled the father role to [Child] and had an 'unbreakable' bond to Child. Stepfather has supported [Child] in every way. [Child] calls [Stepfather] 'dad' and desires to change his last name."

As noted, the *Doe* Court held that the issue is not whether the natural parent or the stepparent would better discharge parental responsibilities.[2] Nonetheless, the Court stated that the

---

[2]     In *Doe*, the magistrate court noted that most of the evidence presented went to such factors as custodial issues, where the children should live, bonding, and how they get along with other

magistrate court's evaluation of best interests of the children "includes their physical, mental, and emotional well-being with all parties involved, stepparent and biological parents." *Id*. In addition, the magistrate court recognized that children can be negatively impacted when a parent fails to maintain a normal parental relationship with them. *Id*. The *Doe* Court also stated that:

> Although there is no requirement that a child suffer harm before the parent's parental rights can be terminated, the lack of any evidence showing that termination of a parent's parental rights is necessary to prevent harm to the children is a factor that the trial court can consider when deciding whether termination of a parent's parental rights is in a child's best interests.

*Id*.[3]

The *Doe* Court upheld the magistrate court's determination that the mother had failed to demonstrate that termination of the father's parental rights would be in the best interests of the children. *Id*. at 18, 333 P.3d at 129. The magistrate court in Doe noted that father believed that some of his failure to physically visit with the children might have been a result of his poor financial condition, his incarceration, and mother's unwillingness to allow him to be alone with the children and that father committed to re-establishing a relationship with the children. *Id*. The magistrate court found no emotional or other harm to the children. *Id*. Consequently, the Court stated that if father remained the legal parent and stepfather continues to serve as the children's daily father figure, the children would lose nothing, assuming father would pay child support and re-establish a relationship with the children. *Id*. Finally, the *Doe* Court rejected mother's request that the Court reweigh the evidence and find that termination would be in the children's best interests. *Id*.

In *Doe*, 162 Idaho at 660, 402 P.3d at 613, the Supreme Court rejected the father's claim that magistrate court improperly considered the stepfather's relationship with the child. The Court

---

siblings. The magistrate court stated that the evidence expressly related to the factors outlined in Idaho Code § 32-717, which issues were not properly before the court in a termination proceeding. *In re Doe*, 157 Idaho 14, 17, 333 P.3d 125, 128 (2014). The Idaho Supreme Court stated that the magistrate court was correct; the I.C. § 32-717 factors are for the court to consider when giving direction for the custody, care, and education of children in a divorce proceeding; and the statute "has no application to proceedings seeking to terminate a parent's parental rights." *Id*. *See Doe v. Doe (2023-36)*, ___ Idaho ___, ___, 544 P.3d 148, 154-55 (Ct. App 2024) (I.C. § 32-717 factors compare the fitness of one parent against the other in custody and support proceedings and are geared toward a different conclusion than best interests in a termination proceeding).

[3] In *Matter of Doe*, 164 Idaho 511, 516, 432 P.3d 60, 65 (2018), the Court made clear that "this Court never intimated that this factor is a determining factor."

noted that a magistrate court is permitted to consider the stability and permanency of a child's home, and part of that analysis would naturally include the stepfather's ability to care for the child. *Id*. The Court quoted the magistrate's determination in that case that it is in the best interests of child to have a legal father who has the commitment to, the familiarity with, and the affection for the child that is necessary for a parent to make decision in the child's best interests, and who has the legal right to make those decisions. *Id*.

Here, in the findings of fact, the magistrate court noted Mother testified that at the time of their separation, Doe was emotionally abusive and threatened to harm himself or Child. Doe was placed on a mental hold and was hospitalized. Doe moved to Idaho Falls to be closer to his family, which the magistrate court found affected his ability to exercise in-person visitation with Child. Doe only had in-person visitation with Child one week per year for the first three years and thereafter, as described above, no in person visits. As to telephone calls, the magistrate court noted testimony that Child needed to be prompted to speak with Doe and, on occasion would not answer when the phone was presented to Child. In regard to Child's situation, Child lives with Mother and Stepfather, is in fifth grade, and enjoys reading, spending time outside, playing baseball, spending time with family, going out to dinner, and having sleepovers. Mother and Stepfather meet Child's physical, mental, and emotional well-being. Stepfather is involved in Child's educational care, helping with schoolwork, and attending parent-teacher conferences. While the determination to terminate a parent's parental rights is not a comparison of whether the parent or a stepparent can better fulfill parental responsibilities, the magistrate court is not required to ignore the overall situation of Child's life while in the care of Mother and Stepfather.

The magistrate court's decision to terminate Doe's parental rights is supported by substantial and competent evidence in the record. Whether a matter has been proved by clear and convincing evidence is primarily a matter for the trial court. *In re Doe*, 153 Idaho 258, 263, 281 P.3d 95, 100 (2012). On appeal, the appellate court does not reweigh the evidence to determine if it was clear and convincing. *Dep't. of Health and Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010). We affirm the termination of Doe's parental rights.

**C.  Attorney Fees**

Mother has requested attorney fees under Idaho Appellate Rule 41 believing that Doe's appeal has been brought frivolously. As a fundamental right is implicated, we decline to award attorney fees. *See Matter of Doe*, 164 Idaho at 518, 432 P.3d at 67.

12

# IV.

# CONCLUSION

The magistrate court's judgment terminating Doe's parental rights is affirmed.

Judge HUSKEY **CONCURS**.

Judge LORELLO, **SPECIALLY CONCURRING**.

I concur in the majority opinion because it is consistent with the Idaho Supreme Court's decision in *Doe v. Doe I (2017-15)*, 162 Idaho 653, 402 P.3d 1106 (2017), and we are constrained by that Court's precedent.[4] However, I write separately to highlight two related points: (1) what I perceive as flaws in having a single statutory scheme that applies to termination of parental rights regardless of whether the petition to terminate is initiated by the Idaho Department of Health and Welfare or by a private party; and (2) the consequences of having this statutory scheme apply to alleged neglect in a private termination case. The statutory scheme applicable to termination of parental rights is codified in Title 16, Chapter 20 of the Idaho Code. While this statutory scheme aligns well with the policies and procedures underlying child protection cases initiated by the Department, it can be an imperfect fit, at best, in termination cases initiated by private parties like the petition in this case.[5]

Termination adjudications involve the "awesome authority" to "'destroy permanently all legal recognition of the parental relationship.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 127-28 (1996), *quoting Rivera v. Minnich*, 483 U.S. 574, 580 (1987). A parent whose rights have been terminated has no standing to seek involvement in the child's life. *See Santosky v. Kramer*, 455 U.S. 745, 749, 759 (1982); *see also* I.C. § 16-2011 (providing that "an order terminating the parent and child relationship shall divest the parent and the child of all legal rights, privileges, duties, and obligations, including rights of inheritance, with respect to each other"). The Idaho Legislature

---

[4] There are some factual differences between *Doe I* and this case, but there are sufficient similarities (particularly when coupled with the standard of review) that the magistrate court's decision in this case cannot be characterized as erroneous.

[5] Idaho Code Section 16-2004(a) authorizes "[e]ither parent" to file a petition to terminate the parental rights "with respect to the other parent." This is somewhat confusing because the definition of "parent" includes: (a) the birth mother or adoptive mother; (b) the adoptive father; (c) the biological father of a child conceived or born during the father's marriage to the birth mother; and (d) the unmarried biological father whose consent to an adoption of the child is required pursuant to I.C. § 16-1504. I.C. § 16-2002(11). Despite the multiple definitions of parent, I.C. § 16-2004(a) appears to contemplate a circumstance involving two readily identifiable parents, such as a biological mother and a biological father.

has articulated two purposes underlying the statutory authorization for this permanent deprivation: (1) to "[p]rovide for voluntary and involuntary severance of the parent and child relationship and for substitution of parental care and supervision by judicial process" in order to "safeguard[] the rights and interests of all parties concerned and promoting their welfare and that of the state of Idaho," *and* (2) to "[p]rovide permanency for children who are under the jurisdiction of the court through the child protective act" in cases "where the court has found the existence of aggravated circumstances or that reasonable efforts to return the child to his or her home have failed." I.C. § 16-2001(1). The second purpose is not relevant to the private termination action in this case because Child was never the subject of a child protection case. Thus, assuming the Legislature intended a single purpose would suffice before terminating a parent's rights despite its use of the conjunctive "and" in I.C. § 16-2001(1), that single purpose must inform the interpretation and application of the remaining provisions in Title 16, Chapter 20. *See* I.C. § 16-2015 (requiring that the termination of parental rights "act shall be liberally construed to accomplish the purposes herein set forth").

Idaho Code Section 16-2005 sets forth the conditions under which termination may be granted. This provision requires that termination be in the best interests of the child *and* that one or more of the statutorily enumerated conditions exists. I.C. § 16-2005(1).[6] The termination condition found by the magistrate court was based on neglect as defined in I.C. § 16-1602(31)(a). That statute provides that neglect includes a child "[w]ho is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them." I.C. § 16-1602(31)(a). If this definition of neglect is construed liberally against the backdrop of the applicable purpose from I.C. § 16-2001(1)(a), i.e., to safeguard the rights and interests of all parties concerned and to promote their welfare and the welfare of the state of Idaho, a parent's rights should not be terminated *unless* the child is without parental care *because of* the conduct or omission of the parent whose rights are being terminated. I recognize that Idaho appellate courts have rejected the argument that a child is not neglected for purposes of I.C.

---

[6] Idaho Code Section 16-2005(2) includes additional conditions, generally involving criminal conduct, in which a parent's rights may be terminated and there is a rebuttable presumption that termination is the child's best interests.

§ 16-1602(31)(a) so long as *someone* is meeting the child's basic needs. *See Idaho Dep't of Health &Welfare v. Doe (2020-37)*, 168 Idaho 74, 79, 479 P.3d 467, 472 (Ct. App. 2021) (rejecting argument that child was not neglected as defined in I.C. § 16-1602(31)(a) because the Department and foster parents provided for the child's needs); *Thompson v. Thompson*, 110 Idaho 93, 96, 714 P.2d 62, 65 (Ct. App. 1986) (rejecting argument that mother did not neglect child because she relied on the "generosity of others" who did care for the child).[7] I agree with this proposition when the "someone" is not one of the child's parents, which was the factual scenario in *Doe (2020-15)* and *Thompson*. But the calculus is different when the "someone" is one of the child's parents and that parent is trying to terminate the rights of the child's other parent based on neglect, as in this case. In that circumstance, the definition of neglect in I.C. § 16-1602(31)(a) does not clearly apply, particularly when viewed with regard for the purpose set forth in I.C. § 16-2001(1)(a). It seems a slippery slope to permanently sever a parent's relationship to his or her child relying on the broad definition of neglect in I.C. § 16-1602(31)(a) in a variety of circumstances that would not typically be considered neglectful. The facts of this case illustrate the point.

The magistrate court first concluded that the father (Doe) neglected Child because Doe has "not played an active role in [Child's] life since [Doe] moved to Idaho Falls in 2017" and Doe "has not had personal contact with [Child] for approximately five years." Elaborating on this finding, the magistrate court explained:

> [Doe] did not maintain regular personal contact with [Child]. [Doe] made the decision to move to Idaho Falls and distance himself from [Child]. Although [Doe] exercised in-person visitation with [Child] for approximately one week per year during the first few years after moving to Idaho Falls, [Doe's] overall efforts to maintain physical contact with [Child] were slight and waned with time.[8] The

---

[7] It is worth noting that, although *Thompson* was a private termination case, there was judicial oversight prior to termination of the biological mother's parental rights following a motion to appoint a guardian ad litem for the child. *Thompson*, 110 Idaho at 94, 714 P.2d at 63. In the context of those proceedings, the court ordered that the child's biological mother be permitted to have unsupervised visitation with the child. *Id.*

[8] From 2017-2019, Child would visit Doe for a week each year in Idaho Falls. The visits went well, and Child had a good time. However, in 2020, during COVID-19, the parties agreed not to exchange Child. In 2021, there were plans to have Child visit Doe for Halloween, but Mother did not permit the visit due to Child's school schedule. Child was then scheduled to visit Doe for the week of Thanksgiving, but Doe asked to reschedule to New Year's. Around this time, Stepfather took over communication with Doe to alleviate Mother's trauma and inability to enforce boundaries with Doe. Doe did not have an in-person visitation with Child in 2022 or 2023.

record does not substantiate that [Mother] prevented [Doe] from physical contact with [Child]. For her part, [Mother] cooperated and communicated with [Doe]. [Doe's] lack of planning, disinterest and casual, somewhat disorganized, approach coupled with the distance from [Child], affected [Doe's] in-person visitation the most. [Doe] desired visitation to occur at his convenience without forethought about [Child's] needs or activities in the Treasure Valley. [Doe] could have done more to maintain regular physical contact with [Child], including planning more than one visitation per year, discussing (ahead of time) a specific parenting plan with [Mother] or seeking a court ordered custody schedule and/or coming to Nampa to see [Child]. Ultimately, [Doe] was passive in his approach to seeing [Child]. He relied on others to make the visits happen and appeared content with the informality of things. [Doe's] own statements throughout the record suggest that he was satisfied with a relationship with [Child] that existed through telephone calls, which were not enough to sustain a parental relationship with [Child].

A parent's rights should not be terminated as a result of moving to another town (or state or country) to be closer to immediate family or to live with and care for a family member (as in Doe's case), to take advantage of a job opportunity, or as a result of deployment. A parent's rights should not be terminated simply because the parent "could have done more to maintain regular physical contact" with a child. Many parents could do "more" to have "regular physical contact" with a child, including parents living in the same city or even in the same home.[9] Nor should a parent's rights be subject to termination because there is no court-ordered custody schedule or where a parent is "passive" in his or her approach to seeing a child. There are legitimate reasons why parents may not have a court-ordered custody schedule, including challenges accessing the courts, or, as in this case, the parents were never married and, therefore, did not need to seek judicial dissolution of their relationship. In my view, the lack of a court-ordered custody schedule should not be given any weight in a decision to terminate a parent's rights. And, although not factually pertinent to this case, a parent's rights should not be subject to termination in circumstances where a parent "was passive" despite a court-ordered custody schedule.

---

[9] Doe did have telephone contact with Child. In fact, Doe testified that, since 2021, he called about one hundred times in an effort to speak with Child. The magistrate court found the frequency of the phone calls "ebbed and flowed" and that there were times that Mother would ignore Doe's calls if Child was "engaged in other activities or at bedtime." Moreover, Mother stopped taking Doe's calls altogether in 2023 and did not tell Child that Doe was trying to contact him--a fact that is difficult to reconcile with the finding that Mother never thwarted visitation. The magistrate court also found that Child sometimes did not want to take Doe's calls, although the magistrate court made no findings as to the reasons why. Notably, there was no finding that Child did not want to take the calls because he did not like Doe. It is hardly unusual that a child does not want to talk on the phone with a parent.

16

Noncustodial parents in divorce cases have varying degrees of contact with their children for many reasons that do not warrant termination of their parental rights. The foregoing circumstances do not leave the child without proper parental care or control, subsistence, medical or other care necessary for the child's well-being.

The second reason the magistrate court identified as a basis for finding neglect was that Doe did not engage in Child's "medical or educational care and did not participate in [Child's] extra-curricular activities" even though Doe was invited to attend those activities. The magistrate court found that Doe "could have taken a more active approach" rather than relying on Mother "to provide him information related to [Child's] medical and educational care and extra-curricular activities." According to the magistrate court, Doe could have sought to obtain information from Child's school or service providers rather than asking Mother. The magistrate court made no related factual findings regarding Child's medical or educational needs. Nor did the magistrate court make any factual findings regarding the logistics of Child's extracurricular activities, including when the extracurricular activities were or in what way Doe was neglectful for failing to make the approximate four-hour drive from Idaho Falls to Nampa to attend such activities. Neither the magistrate court's finding of neglect on this basis nor its factual findings related thereto elucidate how Doe's alleged failures with respect to medical care, education, or extracurricular activities constituted neglect such that termination of his rights was necessary to Child's well-being because of Doe's failures.

The third reason the magistrate court identified as a basis for finding neglect was that Doe had "not provided [Child] with any significant physical or financial support." The related factual findings include: (1) at the time Mother and Doe separated, Doe "was not financially stable" and Mother agreed that Doe "would not immediately pay child support"; (2) "[s]ince the separation, [Doe] has only paid approximately $300.00 to help [Mother] with rent at or around the time of the parties' separation"; and (3) Mother "initiated a formal child support case seeking support" after which Doe sent Mother text messages insistent that he could not afford to pay child support and asking if he could pay "informal" support with Mother having "final say on stuff" and then see if Stepfather could still adopt. Mother rejected Doe's request for informal payments and initiated proceedings to terminate Doe's parental rights rather than pursue court-ordered child support. There was no evidence that the lack of child support from Doe, paid informally or otherwise, deprived Child of care necessary for his well-being. Indeed, Mother's original willingness to

17

forego child support and her abandonment of her formal petition for child support suggests the opposite. If child support payments were necessary to Child's well-being, it seems Mother would have maintained her petition for child support or filed the petition for termination sooner.[10] Furthermore, it is unclear that Doe's failure to pay child support requires termination in order to safeguard the rights and interests of Doe or Child or in order to promote their welfare or the welfare of the state of Idaho. *See* I.C. § 16-2001(1)(a).[11]

Doe's neglect of Child in this case stands in stark contrast to neglect found in most other cases. *See*, *e.g.*, *Idaho Dep't of Health & Welfare v. Doe (2022-22)*, 171 Idaho 277, 284, 519 P.3d 1217, 1224 (2022) (affirming the termination of mother's parental rights based on neglect due to mother's failure to comply with the court's orders and case plan that outlined concerns about mother's use of drugs and alcohol; mother failed to complete out-patient treatment and comply with drug testing requirements in her case plan, and mother failed to show the ability to remain free from substances including alcohol and marijuana); *Idaho Dep't of Health & Welfare v. Doe (2019-16)*, 166 Idaho 57, 66, 454 P.3d 1140, 1149 (2019) (affirming the termination of the father's parental rights based on neglect because the father used methamphetamine, had violent outburst against the mother in front of one of their children, and had multiple felony charges at the time the time of termination trial); *Idaho Dep't of Health & Welfare v. Doe*, 164 Idaho 849, 854, 436 P.3d 670, 675 (2019) (affirming the termination of mother's parental rights because mother had a long history of addiction to methamphetamine and did not start treatment until nearly a year after child was placed in foster care and mother lived with father knowing his constant marijuana use would

---

[10] In determining the amount of child support to be paid, the court may consider the financial resources of the child; the financial resources, needs, and obligations of both the custodial and noncustodial parent parents; the physical and emotional condition and needs of the child and his or her educational needs; the availability of medical coverage for the child at a reasonable cost; and the tax benefit recognized by the party claiming the federal child dependency exemption. I.C. § 32-706(1). A child support calculation also takes into account the time the child spends with each parent, I.R.F.L.P. 126(J)(5), which sometimes incentivizes a parent to request more custodial time. To the extent Mother had concerns about Doe's willingness to make the required payments, child support obligations are enforced by income withholding. *See* I.C. § 32-706(3).

[11] Failure to pay child support cannot be the only factor in support of a decision terminating a parent's rights, but a court may consider it as a factor. *Doe (2017-15)*, 162 Idaho at 659, 402 P.3d at 1112. The magistrate court in this case found that Doe "did not falter in his parental obligations towards [Child] in any one particular way, but many."

18

preclude reunification). Nevertheless, in light of the standard of review and the Idaho Supreme Court's opinion in *Doe (2017-15)*, 162 Idaho 653, 402 P.3d 1106, I am constrained to concur.